RICHARD E. RAWLING, JR. *v.* CITY OF NEW HAVEN
(13251)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued December 3, 1987—decision released January 26, 1988

*Carolyn W. Kone,* assistant corporation counsel, with whom was *Carolyn Spencer,* for the appellant-appellee (defendant).

*Frank B. Velardi, Jr.,* for the appellee-appellant (plaintiff).

PETERS, C. J. The sole issue in this case is whether the trial court erred in granting summary judgment in favor of a police officer who sought indemnity for expenses incurred in defending against criminal charges for sexual assault that were ultimately dismissed. The plaintiff, Richard E. Rawling, Jr., brought this action for indemnification against the defendant city of New Haven under General Statutes § 53-39a.[1] The defendant has appealed from the entry of summary judgment, claiming that its opposing affidavits raise a genuine issue of material fact as to whether the plaintiff was "in the course of his duty" at the time of the alleged criminal offense. The plaintiff has cross appealed from the judgment of the trial court denying him interest on his timely offer of judgment. General Statutes § 52-192a. We find error on the defendant's appeal and therefore need not address the cross appeal.

The following facts are undisputed: The plaintiff was on patrol on the morning of November 18, 1983, when he received a radio dispatch to investigate a citizen complaint. The complainant, D. T., told the plaintiff that

[1] General Statutes § 53-39a provides in relevant part: "Whenever, in any prosecution of an officer of . . . a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of any legal fees necessarily incurred."

he had received harassing phone calls from A. D., and that he wished to have her arrested. At about the same time, A. D. also filed a complaint with the New Haven police, charging D. T. with the same offense. While the plaintiff conducted his investigation at the D. T. residence, the police department dispatched another officer to A. D.'s home to investigate her complaint. That officer was, however, recalled at the plaintiff's initiative. After speaking with D. T., the plaintiff went to A. D.'s home and, unaccompanied by a fellow officer, spoke with A. D., who was home alone. That evening, the plaintiff was arrested pursuant to a warrant issued on the basis of sworn statements by A. D. The plaintiff was charged with committing the crimes of sexual assault in the third degree in violation of General Statutes § 53a-72 and unlawful restraint in the second degree in violation of General Statutes § 53a-96. Roughly one year later, the criminal charges against the plaintiff, to which he had pleaded not guilty, were dismissed.

Following the dismissal, the plaintiff brought the present action against the city of New Haven for: (1) indemnification under § 53-39a for economic loss sustained by him as a result of the prosecution; and (2) interest on the judgment under § 52-192a. In support of his motion for summary judgment, the plaintiff submitted an affidavit, which essentially recounted the undisputed facts described above. In addition, however, the affidavit averred that the plaintiff, after telling A. D. that she could be arrested if the harassing phone calls continued, "immediately left" A. D.'s home.

In opposition to the motion, the defendant submitted two affidavits designed to raise a genuine issue of material fact. The principal affidavit was that of A. D., who maintained that during the plaintiff's visit to the A. D. home he had sexually assaulted her. In particular, the affiant stated that the plaintiff had asked her

to change into "sexy bras, swimsuits or underwear" so that he could see if she was bruised, grabbed her and while forcing her into his lap touched her breast, asked her if she would be embarrassed to dance nude in front of him, forced her onto a bed and asked lewd questions about her breasts, prevented her from leaving the bedroom, and repeatedly asked her if she wanted to earn $300. Before leaving her home, A. D. claimed the plaintiff warned her not to report what had happened. Finally, the affiant stated that when the criminal case against the plaintiff had been reached for trial she was nine months pregnant and therefore did not wish to testify.

The second affidavit, that of H. R. Brereton of the New Haven police department, was offered primarily to substantiate the allegations of A. D. To this end, Brereton, a sergeant who had initially investigated the sexual assault complaint of A. D. against the plaintiff, disclosed three central facts that, according to the defendant, helped to raise a genuine issue of material fact. First, the affiant stated that the plaintiff, prior to entering the A. D. home, told his dispatcher to cancel the other squad car that had been assigned to investigate A. D.'s complaint of harassing phone calls. According to a transcription appended as an exhibit to the affidavit, the plaintiff said: "Yeh, I'm gonna speak with her, I'll solve it all." Second, the transcription showed that the plaintiff had not clocked back into service from his squad car until forty-two minutes after he had arrived at the A. D. home, contrary to his statement that "[the investigation is] going to be settled in about a minute." Third, Brereton's affidavit stated that the plaintiff had violated a department order by conducting a solo interview with a female.

On the basis of the representations contained in these two affidavits, the defendant urged the trial court to deny the motion for summary judgment because there

existed a genuine dispute as to whether the plaintiff was "in the course of his duty" within the meaning of § 53-39a throughout his appearance at the A. D. home. The trial court, relying on its findings that the criminal charges against the plaintiff had been dismissed and that the criminal acts were allegedly committed during the course of investigating a complaint, granted the plaintiff's motion for summary judgment.

On appeal, the defendant claims that the trial court erroneously granted summary judgment. In reviewing this claim, we are bound by familiar rules. Summary judgment is appropriate when "the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 11, 459 A.2d 115 (1983). The party seeking summary judgment has the burden of showing the nonexistence of any genuinely disputed material facts. *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). A party opposing summary judgment must substantiate its adverse claim by presenting evidence that demonstrates the existence of a genuine issue of material fact. *Burns* v. *Hartford Hospital*, 192 Conn. 451, 455, 472 A.2d 1257 (1984). The facts presented must be viewed in the light most favorable to the nonmoving party. *Strada* v. *Connecticut Newspapers, Inc.*, 193 Conn. 313, 317, 477 A.2d 1005 (1984).

In our determination of whether the plaintiff demonstrated his entitlement to judgment as a matter of law, we must begin with the text of § 53-39a. That statute affords a police officer a right of indemnity for economic loss incurred for a prosecution "for a crime allegedly committed by such officer in the course of his duty as such" if "the charge is dismissed or the officer found not guilty." In the present case, it is undisputed that

the plaintiff has satisfied his burden of proving that the charge was dismissed. The issue before us is what meaning to attribute to "crime allegedly committed . . . in the course of . . . duty."

We approach our construction of the statutory language in § 53-39a in accordance with well established principles. Our principal objective is to ascertain the apparent intent of the legislature. *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986). "In our pursuit of that objective, we look to the language of the statute itself, its legislative history, and previous judicial construction. *State* v. *Kozlowski,* [199 Conn. 667, 673–74, 509 A.2d 20 (1986)]; *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985)." Id. Statutes that abrogate or modify governmental immunity are to be strictly construed. *Struckman* v. *Burns,* 205 Conn. 542, 558, 534 A.2d 888 (1987); *Ahern* v. *New Haven,* 190 Conn. 77, 82, 459 A.2d 118 (1983). This rule of construction stems from "the basic principle that when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction." *Edmundson* v. *Rivera,* 169 Conn. 630, 633, 363 A.2d 1031 (1975); see also *Dennis* v. *Shaw,* 137 Conn. 450, 452, 78 A.2d 691 (1951).

With respect to the proper construction of § 53-39a, we are guided by our decision in *Link* v. *Shelton,* 186 Conn. 623, 627–28, 443 A.2d 902 (1983). The plaintiff in *Link* sought indemnity after his acquittal on a charge of breach of the peace. From the summary judgment in favor of the plaintiff, the defendant city of Shelton appealed, claiming that the plaintiff had deviated from the course of his duty by reporting late to work, throwing temper tantrums and creating a disturbance in the

police station waiting room. We held that these alleged facts, if true, would not suffice to preclude indemnity because, under analogous provisions of workers' compensation law, such assaultive conduct is considered to be in the course of employment " 'either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work.' " Id., 628–29, quoting 1 A. Larson, Workmen's Compensation (1978) § 11.00. Although the holding in *Link* v. *Shelton* was that the claimant therein was entitled to indemnity, the underlying rule of that case, and its importance for the present litigation, is that any person who invokes § 53-39a must sustain a twofold burden of proof. In order to receive indemnity, a police officer must prove not only that the charges against him were dismissed, or that he was acquitted, but also that the charges arose "in the course of his duty" as a policeman.

The trial court implicitly recognized this twofold burden when, in granting the motion for summary judgment, it relied on its finding that the plaintiff had entered the A. D. home to investigate a complaint. Even if this finding is correct,[2] we agree with the defendant that it was erroneously deprived of its opportunity to convince a trier of fact that the plaintiff deviated from the course of his duty, as defined in § 53-39a, while inside the A. D. home.

*Link* v. *Shelton* instructs us to construe the phrase "in the course of his duty" by looking to the meaning of "course of employment" under workers' compensation law.[3] *Link* v. *Shelton,* supra, 627. "In order to come

---

[2] The defendant does not concede that the plaintiff entered the A. D. home for the purpose of investigating a complaint. Instead, the city contends that its affidavits give rise to an inference that the plaintiff had the motive and purpose of sexually assaulting A. D. before and as he entered the home.

[3] In *Link* v. *Shelton,* 186 Conn. 623, 629, 443 A.2d 902 (1983), we also held that the law of vicarious liability is a useful interpretative guide in construing the scope of General Statutes § 53-39a.

within the course of the employment, an injury must occur (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." *McNamara* v. *Hamden,* 176 Conn. 547, 550–51, 398 A.2d 1161 (1979). The defendant maintains that a genuine factual dispute exists as to whether the plaintiff has satisfied part (c) of this course of employment test.

Under the law of workers' compensation, no bright line test distinguishes activities that are incidental to employment from those that constitute a substantial deviation therefrom. Id., 556. An employee who substantially deviates from the duties of his employment, however, forfeits his right to compensation. *Woodley* v. *Rossi,* 152 Conn. 1, 5, 202 A.2d 136 (1964). The question of deviation is typically one of fact for the trier. *Labbe* v. *American Brass Co.,* 132 Conn. 606, 609–10, 46 A.2d 339 (1946). In deciding whether a substantial deviation has occurred, the trier is entitled to weigh a variety of factors, including the time, place and extent of the deviation; *Herbst* v. *Hat Corporation of America,* 130 Conn. 1, 7, 31 A.2d 329 (1943); as well as "what duties were required of the employee and the conditions surrounding the performance of his work . . . ." *Farnham* v. *Labutis,* 147 Conn. 267, 270, 160 A.2d 120 (1960). Although an assault can be shown, under certain circumstances, to have occurred in the course of

In recently discussing the connection between vicarious liability and a municipal employee indemnity statute, we noted that the statute was "designed to furnish some relief for injustice that would otherwise attend our well established doctrine of sovereign municipal immunity." *Norwich* v. *Silverberg,* 200 Conn. 367, 374, 511 A.2d 336 (1986). A similar purpose can be discerned from the enactment of General Statutes § 53-39a, which provides a "statutory analogue"; id., 375; to the right of an employee in the private sector to seek relief under a theory of respondeat superior. It is by no means clear, however, that there would be vicarious liability at common law for sexual assault. W. Seavey, Agency (1964) § 89 (c), pp. 156–58; Restatement (Second), Agency §§ 228, 245 (1958).

employment; *Link* v. *Shelton,* supra, 628–29; an assault can also be viewed as a personal frolic unwarranted by the work environment. *Stulginski* v. *Waterbury Rolling Mills Co.,* 124 Conn. 355, 361–62, 119 A. 653 (1938). A sexual assault is generally viewed as foreign to the scope of employment unless the work setting itself precipitates the assault. *Ward* v. *General Motors Corporation,* 431 A.2d 1277, 1280 (Del. Super. 1981); 1 A. Larson, Workmen's Compensation (1985) § 11.22 n.69.

In this case, the defendant has made a persuasive showing, in its affidavits opposing summary judgment, that there exists a genuine issue of material fact as to whether the plaintiff was "in the course of his duty" throughout his visit to the A. D. home. Not only did A. D. attest from personal knowledge that the plaintiff had sexually assaulted her during the visit, but the affidavit of Sergeant Brereton presented three crucial assertions of fact—the violation of a department order, the delay in clocking back into service, and the radio dispatch to cancel a squad car assigned to the A. D. complaint—that support the A. D. account.[4]

The plaintiff has proffered three reasons why we should nonetheless sustain the judgment of the trial court. First, the plaintiff claims that post hoc factual scrutiny of the "course of duty" issue is foreclosed by the criminal records erasure statute. General Statutes § 54-142a. Second, the plaintiff argues that the prior judgment of dismissal conclusively establishes that he was "in the course of his duty" throughout the A. D. investigation. Third, the plaintiff contends that he is entitled to indemnity because the risk of being accused of sexual assault is always incidental to his duties as a police officer. We do not agree with any of these claims.

---

[4] At oral argument, the defendant conceded that the violation of a department order, by itself, would not suffice to deny indemnification to the plaintiff. Instead, as the defendant acknowledged, the alleged violation is relevant only in that it helps to corroborate the veracity of A. D.'s assault complaint.

The plaintiff first claims that factual consideration of the course of duty question is implicitly foreclosed by the criminal records erasure statute. General Statutes § 54-142a.[5] This statute, the plaintiff argues, precludes any further consideration of the facts underlying the charge because, after the dismissal of criminal charges, the criminal records are statutorily erased. This statutory right of erasure is, he claims, contravened by having to relitigate, in a subsequent indemnity action, the substance of the original charges against him. We disagree. We have held that the erasure statute applies only to records of a prior prosecution, not to a victim's memory of an assault, which is based not

---

[5] "[General Statutes] Sec. 54-142a. (Formerly Sec. 54-90). ERASURE OF CRIMINAL RECORDS. (a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken. Nothing in this subsection shall require the erasure of any record pertaining to a charge for which the defendant was found not guilty by reason of mental disease or defect or guilty but not criminally responsible by reason of mental disease or defect.

\* \* \*

"(e) The clerk of the court or any person charged with retention and control of such records in the records center of the judicial department or any law enforcement agency having information contained in such erased records shall not disclose to anyone information pertaining to any charge erased under any provision of this section and such clerk or person charged with the retention and control of such records shall forward a notice of such erasure to any law enforcement agency to which he knows information concerning the arrest has been disseminated and such disseminated information shall be erased from the records of such law enforcement agency. Such clerk or such person, as the case may be, shall provide adequate security measures to safeguard against unauthorized access to or dissemination of such records or upon the request of the accused cause the actual physical destruction of such records. No fee shall be charged in any court with respect to any petition under this section. Any person who shall have been the subject of such an erasure shall be deemed to have never been arrested within the meaning of the general statutes with respect to the proceedings so erased and may so swear under oath."

on records but on personal knowledge. *State* v. *Morowitz,* 200 Conn. 440, 451, 512 A.2d 175 (1986). "The statute does not and cannot insulate [a litigant] from the consequences of his prior *actions."* (Emphasis in original.) Id. Accordingly, the plaintiff's claim must fail because there is no foundation for his initial premise that he has a right not to have the facts underlying an erased record disclosed.

The plaintiff next claims that the fact of dismissal of the charges in the prior criminal prosecution precludes relitigation of the question of whether his conduct was in the course of duty. He argues that because his "status" as a police officer was implicated in the criminal charges, the judgment of dismissal conclusively established that his alleged criminal behavior occurred in the course of his duty as a police officer. We decline to interpret the judgment of dismissal so broadly.

While not overtly phrasing his argument in such terms, the plaintiff essentially claims that the defendant is collaterally estopped by the judgment of dismissal from litigating the course of duty issue. Cf. *State* v. *Tippetts-Abbett-McCarthy-Stratton,* 204 Conn. 177, 181, 527 A.2d 688 (1987) (treating a claim of mootness more appropriately as a claim of collateral estoppel). "Collateral estoppel, or issue preclusion, is the doctrine that bars relitigation, in a second action between the same parties brought upon a different claim, of issues already determined in the first action." *State* v. *Aillon,* 189 Conn. 416, 424 n.8, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983); see also *State* v. *Ellis,* 197 Conn. 436, 464 n.21, 497 A.2d 974 (1985); *In re Juvenile Appeal (83–DE),* 190 Conn. 310, 316, 460 A.2d 1277 (1983); 1 Restatement (Second), Judgments § 27 (1982).

The present record is devoid of proof that the course of duty issue was actually litigated in the prior crimi-

nal case against the plaintiff.[6] At oral argument before us, the plaintiff conceded that the prior criminal case did not include *any* adjudication on the merits of the criminal charges. The preclusive effect of a criminal judgment in a subsequent civil action "presupposes that the issue in question was actually litigated in the criminal prosecution."[7] 1 Restatement (Second), Judgments § 85, comment b (1982). A dismissal of charges, by definition, suggests the total absence of factual determinations. Cf. *Milgrim* v. *Deluca,* 195 Conn. 191, 196–97, 487 A.2d 522 (1985) (holding that a judgment of dismissal for failure to prosecute with diligence is not a bar to subsequent action on the same claim). As a general rule, a criminal judgment based on a plea of nolo contendere or a plea of guilty has no preclusive effect in a subsequent civil action, even though, under the law of evidence, a plea of guilty may constitute an admission against interest. 1 Restatement (Second), Judgments § 85, comment b (1982). This rule is justified because neither type of plea is the product of actual litigation. The same reasoning applies equally to a dismissal of criminal charges.

The plaintiff finally claims that § 53-39a contemplates the awarding of indemnity whenever a police officer is accused of sexually assaulting a member of the public

---

[6] The present record also fails to disclose any reason why the city of New Haven, which was not a party to the prior proceeding, is necessarily bound by the determinations made therein.

[7] As a general rule, a judgment against the state in a criminal case has no preclusive effect in a subsequent civil action. *Page* v. *Phelps,* 108 Conn. 572, 588, 143 A. 890 (1928); 2 Restatement (Second), Judgments § 85, comment g (1982). The principal reason for denying preclusive effect is that "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action . . . ." 1 Restatement (Second), Judgments § 28 (4). The present case does not involve this well established rule. Instead, our discussion in this case focuses on the more general principle that the doctrine of collateral estoppel applies only to issues that have been actually litigated in a prior action between the parties.

because such accusations are always incidental to the duties of a police officer. In the absence of an explicit legislative directive, however, we reject so sweeping an interpretation of § 53-39a.

We do not doubt that police officers may be subject to baseless accusations lodged by disgruntled objects of law enforcement. An officer who is accused of committing a crime arguably within the course of duty will necessarily suffer a financial hardship in mounting an adequate defense. When the prosecution results in a dismissal or an acquittal, the legislature might reasonably have concluded that an officer should not be required to shoulder the costs of defense for conduct that solely benefited his or her employer. Cf. *Norwich* v. *Silverberg*, supra, 374–75. In order to establish a nexus between the costs of defense and a governmental employer's receipt of the benefit of police services, the legislature expressly conditioned a right of indemnity under § 53-39a on a showing that the alleged crime was committed "by such officer in the course of his duty as such."

We recognize that giving independent meaning to the phrase "in the course of his duty" significantly limits the scope of the remedy of indemnification. This phrase, long associated with case-by-case adjudication; *Labbe* v. *American Brass Co.*, supra; imposes upon the plaintiff the burden of proving by a preponderance of evidence that the alleged criminal conduct occurred within the scope of employment. We conclude, nonetheless, as we did in *Link* v. *Shelton*, supra, that the legislature intended such a limitation. Not only do we strive to attach independent meaning to every phrase contained in a legislative enactment; *DeFonce Construction Corporation* v. *State*, supra, 187; *State* v. *Milum*, 197 Conn. 602, 619, 500 A.2d 555 (1985); we also are bound to construe narrowly any statute that modifies or abrogates governmental immunity. *Ahern* v. *New*

*Haven,* supra. Guided by these principles, we decline to interpret § 53-39a to encompass indemnity for any and all criminal prosecutions of police officers for sexual assault.

The trial court was in error in granting the plaintiff's motion for summary judgment. The defendant is entitled to a trial on the genuine issue of material fact raised in its affidavits concerning the question whether the plaintiff's conduct in the A. D. home was "in the course of his duty" as a police officer.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.