[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
This is an eleven count declaratory judgment action brought by Imperial Casualty and Indemnity Company (Imperial) seeking a declaratory judgment in a controversy concerning insurance coverage between Imperial and the defendants particularly as to the duty of Imperial to defend certain lawsuits. The defendants are the State of Connecticut (State) and individual employees of the Connecticut State Police Department ("individual defendants").
On July 30, 1984, Imperial issued a Law Enforcement Professional Liability Insurance Policy to the State, for the policy period July 30, 1984 to July 30, 1986. On July 30, 1986, Imperial issued a second Law Enforcement Professional Liability Insurance Policy to the State which was renewed for the following two years, expiring on July 30, 1989.
During the time period of November, 1989 through June, 1990, ten lawsuits were filed in the United States District Court for the District of Connecticut, (hereinafter collectively referred to as the "federal court lawsuits".) Each of these federal court lawsuits alleges that members of the Connecticut State Police Department engaged in violations of federal penal statutes, including, the antiwiretapping provisions of the Omnibus Crime Control Act of 1968, 18 U.S.C. § 2510-2520. CT Page 2477
The ten federal court lawsuits are the subjects of the first ten counts of the plaintiff's complaint. The eleventh count alleges that, in the event the court finds a duty to defend the defendants in those federal court lawsuits that allege acts committed in the 1986-1989 policy period, a deductible applies to each incident of misconduct.
On February 20, 1991, Imperial filed a motion for summary judgment in this declaratory judgment action claiming that plaintiff was entitled to judgment as a matter of law, accompanied by affidavits and other supporting documentary evidence. Defendants filed an initial memorandum of law in opposition to Imperial's motion, along with an affidavit, and other documentary evidence, and additional memoranda of law were subsequently filed by the parties.
— I —
Imperial argues that it has no duty to defend the defendants in the underlying lawsuits because the allegations in the underlying complaints do not come within the coverage of either insurance policy. Defendants claim that "the potential for liability, and not the language of the complaint, is what gives rise to a duty to defend" and conceding that intentional behavior is not covered, defendants maintain that since the federal court may make a finding of negligent behavior, which is covered by the policy, a duty to defend exists.
The determination of whether Imperial has a duty to defend the federal court lawsuits depends in the first instance on whether the complaint states facts that appear to bring the claims within the policy coverage. Missionaries of Co. of Mary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104,110, 230 A.2d 21 (1967). It is of course true that the duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured or the insurer's ultimate liability to pay. Id. 110, 112. In Lee v. Aetna Casualty Co., 178 F.2d 750,751 (2nd Cir., 1949) It was observed that the duty to defend means `that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury "covered" by the policy; it is the claim which determines the insurer's duty to defend;. . .' Our Supreme CT Page 2478 Court has held that that the insurer is not required to defend if the complaint alleges a liability not covered by the insurance policy. Hogle v. Hogle, 167 Conn. 572, 576,356 A.2d 172 (1975). Recently, our supreme court recognized that negligent and intentional conduct "are separate and mutually exclusive". American National Fire Ins. Co. v. Shuss,221 Conn. 768 (1992). In determining whether the insurer has a duty to defend, this court must look primarily at the allegations in the federal court lawsuits and the policy provisions. However, this analysis requires separate consideration of the policy issued from 1984 to 1986 from the policy issued from 1986 to 1989.
 II.
The 1986 to 1989 Policy
The 1986-1989 policy provides at page 2 that:
 We [Company] will pay those sums that you [Insured] become legally obligated to pay as civil damages because of wrongful acts arising out of Law Enforcement activities to which this insurance applies. . . . The insurance only applies to damages caused by wrongful acts arising out of law Enforcement activities caused by an "occurrence."
An "occurrence" is defined as "an accident", including continuous or repeated exposure to conditions which result in `bodily injury,' `personal injury' or `property damage.'" (1986-89 policy, page 4). Further, in the "Exclusions" section on page 2 the policies provide that: "THIS INSURANCE DOES NOT APPLY TO: 1) Any claim arising out of the willful violation of a penal statute or ordinance. m) Any action, claim or `suit' seeking 1) injunctive relief, or 2) class action, or 3) Relief other than monetary damages."
Of the ten federal court lawsuits, only one (Weinberg) alleges acts committed only within the 1984-1986 policy period. A second lawsuit (Connecticut Criminal Defense Lawyers) alleges acts committed during both the 1984-1986 policy period and the 1986-1989 policy period. The remaining eight lawsuits allege acts committed only in the 1986-1989 CT Page 2479 policy period.
The plaintiffs claim that those federal court lawsuits alleging acts committed in the 1986-1989 policy period are not covered under that policy for the following reasons: "(a) the claims fall within the later policy's willful violation of a penal statute exclusion clause; (b) the claims fall within the later policy's class action and injunctive relief exclusion clause; (c) the complaints fail to allege an `occurrence.'"
The ordinary meaning of "accident" is a "sudden event or change occurring without intent or violation through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." Webster's Third New International Dictionary of the English Language (Merriam, 1976). See Providence Washington Insurance Group v. Albarello, No. 88-509 (D. Conn. 1991), holding that where an insurance policy limits coverage to occurrences, defined as accidents, damages for intentional acts are not covered. To same effect, see also, Berry v. McLemore, 795 F.2d 452, 457
(5th Cir. 1986); Klatt v. Continental Insurance Co.,409 N.W.2d 366, 370 (S.D. 1987); Allstate Insurance Co. v. Moulton,464 So.2d 507, 509-10 (Miss. 1985); Unigard Mutual Insurance Co. v. Argonaut Insurance Co., 579 P.2d 1015, 1018 (Wash. 1978).
Each of the nine federal court lawsuits alleging acts committed during the 1986-1989 policy allege damages from intentional acts. Because the 1986-1989 policy covers only "occurrences", defined as "accidents", the policy does not cover damages from intentional acts. Giving the language used its ordinary and natural meaning, we conclude that Imperial has no duty to defend under the 1986-1989 policy and plaintiff's motion for summary judgment should be granted as to counts three through ten.
 III
The 1984 to 1986 Policy
The 1984-1986 policy provides:
 The Company will pay on behalf of the Insured all sums which the insured CT Page 2480 shall become legally obligated to pay as civil damages because of wrongful acts arising out of Law Enforcement activities, as follows:
 Coverage A — Personal Injury Coverage B — Bodily Injury Coverage C — Property Damage Coverage D — Punitive Damages (Where Permitted by Law)
 to which this policy applies and the Company shall have the right and duty to defend any claim or suit against the Insured seeking damages on account of such wrongful acts, 1111
(1984-1986 policy, p. 1).
The 1984-1986 policy defines personal injury as follows:
 false arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, assault and battery, libel, slander, defamation of character, discrimination, mental anguish, wrongful entry or eviction, violation of property or deprivation of any rights, privileges or immunities secured by the Constitution and Laws of the United States of America or the State for which the Named Insured may be held liable to the party injured in any action at law, suit in equity, or other proper proceedings for redress, However, no act shall be deemed to be or result in personal injury unless committed in the regular course of duty by the insured.
(1984-1986 policy, p. 2). (emphasis Added).
Imperial claims that the federal court lawsuits alleging acts committed in the 1984-1986 policy period are not covered under that policy because "the acts of the individual defendants were not committed in the regular course of duty." CT Page 2481
The 1984-1986 policy provides for coverage of personal injuries caused by wrongful acts arising out of Law Enforcement activities. In the policy's definition of personal injury, however, no act will be considered to result in personal injury unless committed in the "regular course of duty" by the insured.
Although we find no Connecticut decision which has interpreted the language "in the regular course of duty" in the context of an insurance contract, the Connecticut Supreme Court has interpreted the language "in the course of duty" in the context of General Statutes 53-39a. See Rawling v. New Haven, 206 Conn. 100, 537 A.2d 439 (1988); Link v. Shelton,186 Conn. 623, 443 A.2d 902 (1982).
General Statutes 53-39a provides in pertinent part:
 Whenever, in any prosecution of an officer of the division of state police within the department of public safety, . . . for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, . . . .
(Emphasis added).
In Rawling, supra, 101, a police officer sought indemnity from the City of New Haven for expenses incurred in defending a sexual assault charge. The court construed the meaning of "in the course of duty" by looking to the meaning of "course of employment" under worker's compensation law. Id., 106. The court noted, "[i]n order to come within the course of the employment, an injury must occur (a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." Id., 106-07 (citations omitted).
In this case, the acts alleged in the federal court CT Page 2482 lawsuits occurred during the individual defendants' period of employment and at various state police headquarters and barracks throughout the state. This appears to meet the first two requirements set out in Rawling.
The third requirement also seems to have been met, in that a police officer may be reasonably fulfilling the duties of the employment despite the fact that the activity is an illegal one. It would appear that the policy contemplates illegal activities as being in the course of duty by including such acts as assault and battery in the definition of personal injury.
The acts alleged in the federal court lawsuits were not "personal frolics" of the individual defendants (see Rawling, supra, 108) but rather were allegedly a part of a statewide program of the State Police Department to further the law enforcement effort, albeit illegally.
Finally, it is hornbook law that when an insurance policy provision is ambiguous, it should be interpreted in favor of the insured. Aetna Life Casualty Co. v. Bulaong,218 Conn. 51, 58. Because the 1984-1986 policy does not adequately define the meaning of "in the course of duty," The resulting ambiguity should be interpreted in favor of coverage.
We conclude that Imperial does have a duty to defend the Weinberg lawsuit and those acts in the Connecticut Criminal Defense Lawyers lawsuit alleged to have occurred during the 1984-86 policy period. Plaintiffs' motion for summary judgment must be denied as to counts one and two of Imperial's complaint.
 IV
In the eleventh count of the complaint, Imperial alleges that if it is held to have a duty to defend those federal court lawsuits alleging acts committed during the 1986-1989 policy, any liability under that policy is subject to a deductible for each claim. Since we have concluded that Imperial has no duty to defend under the 1986-1989 policy, plaintiffs' motion for summary judgment on this count should be granted. CT Page 2483
Motion for Summary Judgment granted with respect to counts three through eleven of the action for declaratory judgment; otherwise denied.
Wagner, J.