[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONON MOTION FOR SUMMARY JUDGMENT
CT Page 807
On June 14, 1993, the plaintiff, Aetna Casualty Surety Co. [Aetna], filed a one count declaratory judgment action against the defendants, LeRone Jackson and Odell Boykin. In its complaint Aetna alleges that it issued a homeowner's liability policy to Jackson's parents, Margaret and Charles Jackson, covering their premises and all its inhabitants related to them, and that the policy was in effect on January 24, 1991. Aetna further alleges that on that date, Jackson, who lived with his parents, intentionally beat and struck Tyrone Thomas, who suffered severe injuries and died a short time later. Aetna alleges that Boykin, the executrix of the estate of Thomas, brought an action against Jackson seeking damages for Thomas's injuries and wrongful death as a result of Jackson's negligent and reckless conduct. Aetna alleges that under the terms of the liability policy issued by it to Margaret and Charles Jackson, it is obliged to defend Jackson in the civil suit filed by Boykin and indemnify Jackson for any damages assessed against him in the suit, unless Jackson's actions or the incident do not fall within the policy provisions for coverage or unless they fall within the policy exclusions. Aetna seeks a declaratory judgment that the homeowner's policy does not furnish coverage for Jackson in the civil action brought against him by Boykin for any damages assessed against him, and that the policy does not obligate Aetna to defend Jackson in that action.
On November 10, 1993, Boykin filed an answer. On May 5, 1994, Jackson was defaulted for failure to appear. On May 11, 1995, Aetna filed an amended complaint adding allegations of intentional conduct by Jackson as a result of the filing of an amended complaint by Boykin in the underlying action adding allegations of intentional conduct by Jackson.
On May 12, 1995, Aetna filed a motion for summary judgment, accompanied by a memorandum of law, a copy of the proposed amended complaint in the underlying action, Boykinv. Best, CV92-0511180S, a copy of the homeowner's liability policy issued to Margaret and Charles Jackson, and uncertified copies of excerpts from transcripts of court proceedings and statements made to the Bloomfield police by LeRone Jackson and Darian West. Aetna later submitted an CT Page 808 affidavit by Mary Lou Sullivan, Team Leader, Aetna Underwriting Department, attesting that the copy of the homeowner's policy attached to the motion for summary judgment is a true copy of the policy issued to Margaret and Charles Jackson.
Boykin filed an objection to the motion for summary judgment dated June 12, 1995, accompanied by a memorandum of law, a copy of the proposed amended complaint in the underlying action, a copy of a portion of the homeowner's liability policy issued to Margaret and Charles Jackson, and uncertified copies of excerpts from transcripts of court proceedings, excerpts from the deposition transcripts of Darian West and Malka Shah, M.D., and a statement made to Bloomfield police by LeRone Jackson.
Summary judgment is appropriate "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; see Barrett v. Danbury Hospital, 232 Conn. 242, 250,___ A.2d ___ (1995). "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.) Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 105, 639 A.2d 507
(1994). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Barrett v. Danbury Hospital, supra; seeSuarez v. Dickmont Plastics Corp., 229 Conn. 99, 106,639 A.2d 507 (1994).
"A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimonyunder oath, disclosures, written admissions and the like." (Emphasis added.) Practice Book § 380. "`Uncertified copies of excerpts of deposition transcripts are not admissible as evidence and do not comply with the requirements of Practice Book [§] 380.' Oberdick v.Allendale Mutual Insurance Company, 9 Conn. L. Rptr. 607, CT Page 809 608 (August 25, 1993, Celotto, J.). `Copies of uncertified and unauthenticated deposition testimony may not be used in deciding a motion for summary judgment.' Balderston v.Shoals Construction, Inc., 9 Conn. L. Rptr. 343 (July 1, 1993, Lewis, J.)." Valerio v. International BusinessMachines Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 0366953 (September 1, 1994, Hennessey, J.).
As noted above, both parties submitted uncertified copies of excerpts of deposition testimony or testimony at Jackson's plea hearing and the trial of Angus Best. Although the court could find that these excerpts should not be considered in deciding the motion for summary judgment in that the parties have not complied with the requirements of Practice Book § 380, the court will decide the issue on the merits.
Aetna argues that no genuine issue of material fact remains because the facts alleged in the underlying action show that the incident was not an accident, and thus not an Aetna argues that no genuine issue of material fact remains because the facts alleged in the underlying action show that the incident was not an accident, and thus not an "occurrence" covered by the homeowner's policy. Aetna further argues that no genuine issue of material fact remains that Jackson's actions were intended to do bodily harm; therefore, the incident falls within the policy exclusion for intentional or expected bodily injury.
Boykin argues that Aetna is collaterally estopped from arguing that Jackson's conduct was not reckless, and the insurance policy does not exclude conduct that is reckless. Boykin argues that because Jackson pleaded guilty to manslaughter in the second degree, the issue of whether Jackson's actions were intentional was not litigated, so that Jackson's intent has not been conclusively established. Boykin also claims that a genuine issue of material fact remains as to whether Jackson intended to commit the injury that resulted — the death of Tyrone Thomas. Boykin further argues that because the insurer's duty to defend is broader than the duty to indemnify, Aetna has a duty to defend against the allegations of negligence and recklessness in the underlying complaint. CT Page 810
Under the terms of the policy issued by Aetna to Margaret and Charles Jackson, Aetna will provide liability coverage and a defense "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." (Certified copy of policy, section — Liability Coverages, Coverage E, p. 13). "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general conditions, which results, during the policy period, in: a. bodily injury; or b. property damage." (Certified copy of policy, Definitions, p. 1, para. 6, as amended by endorsement dated 9/90). The policy further provides that coverage E does not "apply to bodily injury or property damage: a. which is expected or intended by any insured." (Certified copy of policy, section II — Exclusions, p. 14, para. 1).
"Accident" is not defined in the policy. "Accident is defined as "[a]n unexpected, undesirable event. . . . an unforeseen incident. . . . Lack of intention; chance." American Heritage College Dictionary (3d Ed. 1993), p. 8.
In the underlying complaint, Boykin alleges in the second count that Jackson, "while engaged in rough horseplay, negligently and carelessly struck the plaintiff's decedent about the back, chest, face and head causing the plaintiff's decedent to suffer the severe personal injuries resulting in his death as hereinafter set forth." (Amended complaint, second count, para. 5). In the fourth count, Boykin alleges that Jackson, "while engaged in rough horseplay, recklessly struck the plaintiff's decedent." (Amended complaint, fourth count, para. 5). In the sixth count, Boykin alleges that Jackson, "while engaged in rough horseplay, intentionally struck the plaintiff's decedent." (Amended complaint, sixth count, para. 5).
Jackson pleaded guilty to manslaughter in the second degree in connection with the death of Thomas. General Statutes § 53a-56 provides in pertinent part: "(a) A person is guilty of manslaughter in the second degree when: (1) Herecklessly causes the death of another person." (Emphasis added.) General Statutes § 53a-3 (13) provides that "recklessly" has the following meaning for purposes of Title 53a: "A person acts `recklessly' with respect to a result CT Page 811 or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." General Statutes § 53a-3 (11) provides: "A person acts `intentionally' with respect to conduct or to a circumstance described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."
"`Recklessness is a state of consciousness with reference to the consequences of one's acts. Commonwealthv. Pierce, 138 Mass. 165, 175 [1884]. . . . It is "more than negligence, more than gross negligence." Bordonaro v. Senk,109 Conn. 428, 431, 147 A. 136 [1929].'" Dubay v. Irish,207 Conn. 518, 532, 542 A.2d 711 (1988). "`Reckless conduct is not intentional conduct because one who acts recklessly does not have a conscious objective to cause a particular result.'" Griffin v. Parker, 219 Conn. 363, 370,593 A.2d 124 (1991), quoting State v. Beccia, 199 Conn. 1, 4,505 A.2d 683 (1986).
"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action."Aetna Casualty Surety Co. v. Jones, 220 Conn. 285, 296,596 A.2d 414 (1991). "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Citations omitted; internal quotation marks omitted.) Id. The question of whether Jackson's conduct was intentional was not litigated, and thus was not conclusively established.
"As a general rule, a criminal judgment based on a plea of nolo contendere or a plea of guilty has no preclusive effect in a subsequent civil action, even though, under the law of evidence, a plea of guilty may constitute an CT Page 812 admission against interest. 1 Restatement (Second), Judgments 85, comment b (1982). This rule is justified because neither type of plea is the product of actual litigation." Rawling v. New Haven,206 Conn. 100, 111,537 A.2d 439 (1988).
"To show an intentional act within the exclusion of a policy two elements are necessary: (1) the insured must have intended to commit the act and (2) to commit the injury that resulted." Allstate Insurance Co. v. Plude, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 0303371 (13 Conn. L. Rptr. 453, February 1, 1995, Saden, S.T.R.); see Markey v. Santangelo, 195 Conn. 76, 77,485 A.2d 1305 (1985 ("Not only the action producing the injury but the resulting injury must be intentional").
"In its most common usage, `intent' involves `(1) . . . astate of mind (2) about consequences of an act (or omission) and not about the act itself, and (3) it extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act.'" (Emphasis in original.) AmericanNational Fire Insurance Co. v. Schuss, 221 Conn. 768, 776,607 A.2d 418 (1992), quoting W. Prosser and W. Keeton, Torts (5th Ed. 1984), p. 34. "Also, the intentional state of mind must exist when the act occurs. . . . Thus, intentional conduct extends not only to those consequences which are desired, but also to [t]hose which the actor believes are substantially certain to follow from what the actor does. . . . Furthermore, [i]t is not essential that the precise injury which was done be the one intended. . . . Rather, it is an intent to bring about a result which will invade the interests of another in a way that the law forbids." (Citations omitted; internal quotation marks omitted.)American National Fire Insurance Co. v. Schuss, supra. "It is not necessary that the precise injury that occurred be the one intended, so long as the injury was the direct and natural consequence of the intended act." Id., 779.
"A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue. . . . An intended or wilful injury does not necessarily involve the ill will or malevolence shown in express malice, CT Page 813 but it is insufficient to constitute such an intended injury that the act . . . was the voluntary action of the person involved. . . . Both the act producing the injury and the resulting injury must be intentional. . . . The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act. . . . The known danger involved must go from being a foreseeable risk which a reasonable man would avoid and become a substantial certainty." (Citations omitted; internal quotation marks omitted.) Suarez v. DickmontPlastics Corp., 229 Conn. 99, 108-09, 639 A.2d 507 (1994).
"Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case. . . . Thus, whether the actor knows that the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury." (Citation omitted.) Suarez v. Dickmont PlasticsCorp., supra, 229 Conn. 111. "`[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.'" Id., quotingBatick v. Seymour, 186 Conn. 632, 646-47, 443 A.2d 471
(1982).
In this case, even with the court considering the excerpts of testimony and the copies of statements produced by both parties, these excerpts and statements do not establish that Jackson intended the consequences of his actions: the death of Thomas. While the documents submitted show that Jackson intended to hit Thomas, Aetna has not conclusively shown that Jackson knew that Thomas's death or even bodily injury to Thomas was certain or substantially certain to result from his conduct, or that Thomas's death was the direct and natural consequence of the blows inflicted by Jackson. The determination of whether the death of Thomas was an "accident" within the definition of "occurrence," or whether Thomas's death or at least bodily injury to Thomas was expected or intended by Jackson such that it falls within the exclusion, relies upon underlying questions of fact related to Jackson's intent. Accordingly, the court finds that because a material factual issue CT Page 814 remains with respect to Jackson's intent, Aetna's motion for summary judgment should be and is denied.
J. Koletsky, J.