[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The original plaintiff, Citytrust, commenced this action on July 20, 1985, to foreclose upon a note and mortgage after the defendant-mortgagees, Leon and Mary Cooper (the Coopers), defaulted on said note and mortgage.[1] After the action was commenced, the following junior encumbrancers joined the action CT Page 1414-CCC as party defendants: Fleet Bank, National Westminster Bank, and Standard Oil Company.
On October 27, 1983, Merrill Lynch Equity Access, Inc. (MLEA) and the Coopers executed a credit agreement and note for an open-end credit account secured by a mortgage on the Coopers' residence.[2] In January 1985, Leon Cooper approached an entity known as Capital Impact Corporation (Capital), a subsidiary of Citytrust Bancorp, Inc. (the holding company of Citytrust) for a loan to be used by Elmsmere Company, an entity owned by Leon Cooper. In a letter dated January 28, 1985, Capital expressed its interest in negotiating a loan in the amount of $300,000.00. On February 1, 1985, Citytrust agreed to lend $150,000.00 to the Coopers. The Coopers accepted and granted a second mortgage to Citytrust to secure the loan.
On February 12, 1985, the Coopers defaulted on the MLEA credit agreement. On March 1, 1985, the Coopers defaulted on the Citytrust loan. As a result, on January 7, 1986, MLEA, the first mortgagee, commenced a foreclosure action against the Coopers. See Merrill Lynch Equity Access v. Cooper, Superior Court, judicial district of Fairfield, No. 22898 (the MLEA action). Citytrust was named as a defendant in the MLEA action because of its second mortgage on the Coopers' residence. On July 20, 1985, Citytrust commenced the present action against the Coopers.
On November 18, 1985, the Coopers filed a counterclaim against Citytrust in which they alleged that "Citytrust . . . through [a] `commitment' letter dated January 28, 1985 . . . agreed to loan defendants $300,000. [Citytrust] breached this written agreement by loaning defendants only $150,000. If not for this [breach], there would be no default by defendants as [Citytrust was] fully aware defendant LE Cooper [was] starting [a] business and the funds were to be used as sole support during startup period. The sole condition in the commitment letter of appraisal above $800,000 has been met and [Citytrust was] informed of such on numerous occasions." The Coopers also filed a similar crossclaim against Citytrust in the MLEA action. In that crossclaim the Coopers alleged that Citytrust breached its loan commitment because it loaned them only $150,000.00, instead of the full $300,000.00 amount as stated in the letter issued by Capital Impact, thereby causing the Coopers to default on their credit agreement with MLEA. CT Page 1414-DDD
On June 24, 1989, Citytrust discharged a lis pendens that it had placed on the land records for the Coopers residence. The Citytrust mortgage debt was ultimately paid, and on September 28, 1989, Citytrust withdrew its complaint against the Coopers. By order of the court dated August 9, 1991, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver for Citytrust. The FDIC was later substituted for Citytrust as a defendant in this action.
On October 7, 1992, the Coopers filed an additional counterclaim against the FDIC in which they alleged that the FDIC's sale of Citytrust's assets to Chase Manhattan Bank (Chase) was fraudulent because Chase did not pay fair value for Citytrust's assets. The Coopers also filed a similar crossclaim against the FDIC in the MLEA action. Thus, while the foreclosure aspect of the present case was resolved in July 1989 when the Coopers refinanced their residence and paid off the Citytrust mortgage, the Coopers continue to pursue their counterclaims against the FDIC as receiver for Citytrust.
On November 15, 1995, the FDIC filed a motion for summary judgment (motion #222) on the Coopers' counterclaim for breach of the alleged loan commitment. The motion is supported by a memorandum of law and documentary evidence.
"Summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Practice Book § 384. `In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such an issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment].' (Citations omitted; internal quotation marks omitted.) Water WayProperties v. Colt's Mfg. Co., 230 Conn. 660, 664-65, 646 A.2d CT Page 1414-EEE 143 (1994). Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. See Practice Book § 381." Home Ins. Co. v. Aetna Life CasualtyCo., 235 Conn. 185, 202-03, 663 A.2d 1001 (1995).
"`In evaluating the propriety of a summary judgment, we are confined to an examination of the pleadings and affidavits of the parties to determine whether (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law.' (Internal quotation marks omitted.) Broadley v. Board of Education, 229 Conn. 1, 4 n. 7,639 A.2d 502 (1994)." Miller v. United Technologies Corp.,233 Conn. 732, 745, 660 A.2d 810 (1995). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way. Haesche v. Kissner, 229 Conn. 213, 216,640 A.2d 89 (1994). `The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party.' (Citations omitted; internal quotation marks omitted.) Batick v. Seymour, 186 Conn. 632,647-48, 443 A.2d 471 (1982). `[A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed.' (Emphasis added.) United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380, 260 A.2d 596
(1969). The facts as well as the evidence must be viewed in the light most favorable to the nonmoving party. Rawling v. NewHaven, 206 Conn. 100, 104, 537 A.2d 439 (1988). The burden of proof is on the moving party and the standards of summary judgment are strictly and forcefully applied. D.H.R.Construction Co. v. Donnelly, 180 Conn. 430, 434, 429 A.2d 908
(1980)." Miller v. United Technologies Corp., supra, 233 Conn. 751-52.
The FDIC, as receiver for Citytrust, moves for summary judgment (motion #222) on the Coopers' counterclaim for the alleged breach of the loan commitment on the following grounds: (1) the counterclaim is barred by the D'Oench Duhme doctrine; (2) there was no enforceable contract between Citytrust and the Coopers to lend funds over and above the $150,000.00 that was initially loaned to the Coopers; and (3) there was no legally binding commitment to loan $300,000.00 to the Coopers. CT Page 1414-FFF
The meaning of a clear and unambiguous writing is a question of law for the court. See, e.g., Pero Building Co. v.Smith, 6 Conn. App. 180, 184, 504 A.2d 524 (1986). Upon review of the documentary evidence submitted by the FDIC, the court concludes that the letter of intent drafted by Capital Impact, a subsidiary of Citytrust's holding company, does not constitute an agreement to loan any amount of money to the Coopers. While the letter evidences the fact that Capital Impact and Leon Cooper discussed a loan in the amount of $300,000.00, the letter plainly states that "[t]his letter of intent is not a bindingcommitment on the part of Capital for any purpose, but only anexpression of interest to conduct an investigation into theaffairs of Elmsmere with a view of issuing a bindingcommitment. . .." (Emphasis added.) See FDIC's memorandum of law, Exhibit B. In fact, the letter of intent does not even mention Citytrust, nor does it indicate that any statements made by Capital Impact would be binding upon Citytrust.
The FDIC argues that assuming either written or oral agreements to lend additional funds were made between the Coopers and agents of Citytrust, these unrecorded statements are barred by the D'Oench Duhme doctrine, and therefore, cannot support a crossclaim against the FDIC based on the bank's alleged breach of an agreement to lend money to the Coopers.
In D'Oench, Duhme Co. v. Federal Deposit Ins. Corp.,315 U.S. 447 (1942), the Supreme Court concluded that there was a 'federal policy to protect . . . [the FDIC] and the public funds which it administers, against misrepresentations as to the assets in the portfolios of the banks which . . . [the FDIC] insures or to which it makes loans." Id., 315 U.S. at 457. "In order to effect this federal policy, the Court fashioned a common law rule of estoppel precluding a borrower from asserting against the FDIC defenses based upon secret or unrecorded `side agreements' that altered the terms of facially unqualified obligations." Bell Murphy Assoc. v. Interfirst BankGateway, 894 F.2d 750, 753 (5th Cir. 1990).
Congress subsequently codified the D'Oench Duhme doctrine at 12 U.S.C. § 1823 (e). Bateman v. FDIC, 970 F.2d 924, 926 (1st Cir. 1992). "Courts often consider the D'Oench Duhme doctrine and § 1823(e) in tandem, looking to the common law when construing the statute." Beighley v. FDIC, 868 F.2d 776, 784
(5th Cir. 1989). Section 1823(e) provides that: CT Page 1414-GGG
 No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement:
(1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder . . . contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee . . ., and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.
12 U.S.C. § 1823 (e). Agreements that do not comply with these four requirements are unenforceable against the FDIC. Langley v.Federal Deposit Ins. Corp., 484 U.S. 86 (1987); FDIC v. CaledoniaInv. Corp., 862 F.2d 378, 383 (1st Cir. 1988). Thus, special defenses and counterclaims asserted against the FDIC, when based on unrecorded "side agreements," are barred by both § 1823(e) and the D'Oench Duhme doctrine. See, e.g., FDIC v. Kasal, 913 F.2d 487,493 (8th Cir. 1990); Astrup v. Midwest Federal Savings Bank,886 F.2d 1057, 1059 (8th Cir. 1989); Beighley v. FDIC, supra, 868 F.2d 784.
Here, the FDIC acknowledges that Citytrust loaned $150,000.00 to the Coopers. Necessarily, officers of Citytrust approved of a loan in that amount. However, the letter of intent issued by Capital Impact, without more, cannot establish that Citytrust ever committed to loan additional monies to the Coopers.
In support of its motion, the FDIC submits a copy of a "notice of disallowance of claim" sent by the FDIC to the Coopers. The notice states in pertinent part: "The `agreement' to which you referred, is a letter of intent . . . on the letterhead of the subsidiary, Capital Impact, not by the receivership bank, CT Page 1414-HHH Citytrust. Although it is suggested that the obligations of the subsidiary were assumed by Citytrust in 1986, there is no evidenceof this in the file of the bank. . . ." (Emphasis added.)
The Coopers have not produced evidence to support their allegation that there was a written agreement executed by Citytrust to lend them an additional $150,000.00. Even if the Coopers were able to produce such a written agreement, they would have to produce evidence that would dispute the FDIC's claim (i.e., they would have to produce evidence that the agreement was executed by Citytrust, and that it was approved by the directors of Citytrust, and that it is part of Citytrust's official records). In the absence of an agreement which meets the requirements of 12 U.S.C. § 1823 (e), the Coopers' counterclaim for the breach of an agreement by Citytrust to lend additional monies to the Coopers, brought against the FDIC as receiver for Citytrust is barred by the D'Oench Duhme doctrine and 12 U.S.C. § 1823 (e), and therefore must fail as a matter of law.
The FDIC has not moved for summary judgment on the Coopers' fraud counterclaim. Thus, the fraud counterclaim remains as part of this case. Accordingly, the court grants the FDIC's motion for summary judgment (#222) as to the Coopers' counterclaim for breach of the alleged loan commitment. Dispositive motions addressing the fraud count of the counterclaim shall be filed by the parties by March 1, 1996.
Bruce L. Levin, Judge of the Superior Court