# Town of Plainfield *v.* Commissioner of Revenue Services
## (13718)

Peters, C. J., Shea, Callahan, Covello and Hull, Js.

Argued October 6—decision released December 19, 1989

*Thomas B. Wilson,* town attorney, for the appellant (plaintiff).

*Jane D. Comerford,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellee (defendant).

SHEA, J. The principal issue in this appeal is whether the plaintiff town of Plainfield, when it furnished police protection pursuant to General Statutes § 7-284,[1] provided a taxable service under General Statutes § 12-407 (2) (i) (E)[2] and § 12-426-27 (b) (5) of the Regulations of Connecticut State Agencies.[3] As a result of an audit, the defendant tax commissioner assessed sales taxes upon the amount charged by the plaintiff for rendering police protection to the Plainfield Dog Track. The plaintiff appealed to the Superior Court, which ruled that the assessment was lawful and, therefore, dismissed the appeal. We find no error.

---

[1] General Statutes § 7-284 provides in part: "When police protection is necessary or required at any boxing bout or wrestling match, place of public amusement, sport contest or hockey, baseball or basketball game, or any other exhibition or contest, which is being held or is to be held in any municipality, the amount of such protection necessary shall be determined and shall be furnished by (1) the chief or superintendent of the police department in any municipality having an organized or paid police department . . . . Any such protection shall be paid for by the person or persons operating, conducting or promoting such game, exhibition or contest."

[2] General Statutes (Rev. to 1985) § 12-407 (2) (i) (E) provides: "(2) 'Sale' and 'selling' mean and include . . . (i) the rendering of certain services for a consideration, exclusive of such services rendered by an employee for his employer, as follows . . . (E) private investigation, protection, patrol work, watchman and armored car services."

[3] Section 12-426-27 of the Regulations of Connecticut State Agencies provides in part: "(a) The rendering of the following enumerated services for a consideration, defined in subsection (b) of this regulation . . . shall be a sale and subject to the sales tax. . . .

"(b) Enumerated services. . . .

"(5) Private investigation, protection, patrol, watchman and armored car services.

"Such services mean and include providing personnel or canines to patrol or guard property; engaging in detective or investigative duties; safeguard-

The trial court found the following facts. The town of Plainfield maintains a police department headed by a chief of police and operating under a board of police commissioners. The dog track regularly attracts a large number of patrons during racing performances. Pursuant to § 7-284, the police chief determined that police protection was required during these performances and, thereafter, provided the services he deemed to be necessary. The officers providing those services were assigned by means of a permanent weekly schedule, were responsible for performing the duty as assigned, worked in uniform, and were under the supervision and control of the chief during their tours of duty. The collective bargaining contract between the plaintiff and the police union provided that service at the dog track was "extra duty," for which the officers were paid one and one-half times their regular hourly rate. The officers' services at the track were paid for by the plaintiff, which also made the necessary deductions for income tax and social security. The track paid the plaintiff $91,000 per year for the services rendered by these officers, with no profit being realized by the plaintiff as a result of the payments.[4]

On appeal, the plaintiff claims that the trial court erred in concluding that the services rendered by the police officers were taxable because: (1) the services were of a "public" rather than a "private" nature; (2) the services were excluded from the sales tax by virtue of being rendered by "on-duty" police officers; (3) the services were excluded from the imposition of

---

ing or maintaining a surveillance of an individual; maintaining and monitoring mechanical protective devices, such as burglar and fire alarm systems; providing armored cars for the transportation of valuables; wrapping coins; setting up a payroll; and the rendering of police services by an off-duty policeman."

[4] The fee of $91,000 per year was arrived at in 1986, as part of the settlement of a suit brought by the town after the dog track had refused to make any payment for the services rendered by the police department.

a sales tax by virtue of being rendered as a function of an employee-employer relationship; and (4) the applicable regulation was beyond the authority conferred by the relevant statutes. We conclude, relying partly on our recent decision in *Berlin* v. *Commissioner,* 207 Conn. 289, 540 A.2d 1051 (1988), that there is no error.

I

The plaintiff first claims that its police services do not fall within the statutory confines of § 12-407 (2) (i) (E), which defines as taxable sale "the rendering of certain services for a consideration . . . [including] private investigation, protection, patrol work, watchman and armored car services." The plaintiff maintains that, under this statute, only those activities are taxable that are performed on a "private" rather than on a "public" basis. From this premise, the plaintiff then argues that because § 7-284 "mandates" police protection at such establishments as the dog track, there can be no sales tax due for the services rendered by the plaintiff's police officers in protecting the public.

When this argument was presented at trial, the court refused to decide whether the legislature intended to confine "protection" and "patrol work" solely to private protection and private patrol work. The court did conclude, however, that if the plaintiff had provided a public service to the dog track, "similar to normal public police services provided to residents of the Town of Plainfield, then no payment would be required of the Track just as no resident of the Town is required to pay for public police services." The court concluded that the services rendered by the officers were "in the nature of 'private' and not 'public' services." It declared that the "service provided is not to the public at large but to a profit-making institution." The court relied upon the undisputed applicability of § 7-284 to the dog

track, requiring it to pay for the services it received from the police department, as an indication that these services were not "normal everyday public police services regularly rendered to Town residents." We agree with the trial court.

Section 7-284 provides that when police protection is "necessary" at any listed event, "the amount of such protection necessary shall be determined and shall be furnished by" the chief of police. The flaw in the plaintiff's argument is that § 7-284 does not "mandate" public protection at the enumerated events. Section 7-284 represents, rather, a legislative determination that in some circumstances the security arrangements, if any, provided by the promoter of an event may not be adequate and, further, that the ultimate determination of adequacy is to be made by a police official rather than the promoter.[5] With this understanding, we conclude that the police services rendered to the dog track by the plaintiff's police officers are indistinguishable from the police services that we determined, in *Berlin* v. *Commissioner,* supra, were subject to a sales tax assessment.

In *Berlin,* the furnishing of off-duty police officers, requested and paid for by private citizens, was held to be subject to collection of a sales tax. Here, the nature of the actual service provided by the plaintiff's police officers is identical to that provided by the officers in *Berlin*—protection for private citizens above and beyond that required during the normal course of the

---

[5] While the trial court made no finding of fact regarding the amount of protective service provided by the dog track itself, counsel for the plaintiff did indicate, during oral argument, that the dog track employs its own security force. In its brief the plaintiff concedes that a contract for such "private" protection would be subject to payment of a sales tax. The plaintiff's chief of police determined, however, that two uniformed officers were necessary in addition to the security force provided by the dog track. The propriety of the police chief's exercise of discretion in making that determination is not before us in this appeal.

officer's duties. The only difference in this case is that the determination of whether those services were required at the dog track was made by a police official rather than the owners of the track.

Section 12-407 (2) (i) (E) looks to the type of service actually rendered, and not to the status of the person who decides that it should be rendered. Our conclusion that the services rendered here were private in nature and therefore taxable is reinforced further by the legislature's specific mandate, in § 7-284, that the cost of such protective services is to be borne by the promoter rather than the town. As the trial court correctly concluded, if the services rendered pursuant to § 7-284 were truly of a "public" nature, the legislature would not have provided that the dog track must shoulder the cost of providing them. We conclude that the trial court's resolution of this issue was not erroneous.

## II

In its next claim of error, the plaintiff argues that since, under § 12-426-27 (b) (5) of the Regulations of Connecticut State Agencies, it is the rendering of protective services by "off-duty" police officers that is subject to a sales tax, there can be no such tax in this case, because the officers working at the dog track were "on-duty." The plaintiff concedes that duty at the dog track "is denominated as extra-duty in the collective bargaining agreement, and overtime rates apply," but argues, nevertheless, that since the officer's duty at the track is under the control of the chief of police, the term "extra-duty" is equivalent to "on-duty" rather than "off-duty." The trial court concluded that whatever distinction could be made between "extra-duty" and "off-duty" was irrelevant, as it was the plaintiff, and not the police officers, upon which a sales tax for the services rendered was being imposed.

On the basis of *Berlin,* we hold that the court's conclusion was correct. In *Berlin,* an assessment against the town for payment of a sales tax was upheld despite the fact that the police officers rendering services "off-duty" were found to be employees of the private citizens desiring their assistance. We decided that by furnishing its officers for off-duty assignments, in accordance with a collective bargaining agreement, the town had "benefited to the extent that such a contract provision contributed to labor peace with its police officers." *Berlin* v. *Commissioner,* supra, 294. We stated that it was "reasonable to conclude further that the plaintiff also benefited from the added police presence in the town." Id., 294–95. The trial court noted that, beyond the indirect benefits present in *Berlin,* in this case "a direct monetary benefit was received by the Town[,] making an even stronger case for the finding that the services were rendered for 'consideration'. . . ."

Having concluded that the plaintiff had rendered "certain services for a consideration," in accordance with § 12-407 (2) (i), the trial court ruled that the "duty" status of the officers working at the dog track was irrelevant, since "it is the Town which is being taxed on the services which it rendered to the Track." The court's conclusion was implicitly based on its ruling that the services rendered by the plaintiff were "private" rather than "public" and were thus taxable, under the applicable regulation, as "private protection" or "private patrol" services rather than as "the rendering of police services by an off-duty policeman." We agree with the trial court's analysis and its conclusion that the police department's services were of a "private" rather than "public" nature. The plaintiff, by furnishing officers to the track, stands in essentially the same position as would a private contractor furnishing security personnel for the same purpose. Since the

plaintiff concedes that such a private contractor would have been subject to the sales tax, we hold that the trial court did not err in resolving this issue in favor of the defendant commissioner.

Our conclusion regarding this issue is also dispositive of the plaintiff's further claim that the services it rendered to the dog track were excluded from an assessment of a sales tax by virtue of the fact that the police officers' services were "rendered by an employee for his employer." General Statutes § 12-407 (2) (i). As the trial court correctly ruled, "the issue is not the relationship of the officers to the Town, but whether the Town is rendering services to the Dog Track." Since we have concluded that those services were of a private nature and thus, subject to an assessment of a sales tax, the exclusion provided in § 12-407 (2) (i), for services rendered by an employee for his employer, is simply inapplicable in the present case.

### III

The plaintiff's final claim is that § 12-426-27 (b) (5) of the Regulations of Connecticut State Agencies, which requires the assessment of a sales tax for "the rendering of police services by an off-duty policeman," is invalid, since it is beyond the scope of General Statutes § 12-407 (2) (i) (E). We decline to review this issue, since the trial court's decision did not rest upon a determination that the plaintiff was rendering police services through off-duty police officers.

As we have previously stated, the trial court ruled that the duty status of the police officers was irrelevant, since the plaintiff was found to be providing "private" rather than "public" protection to the dog track. While the trial court did conclude that "[i]n the absence of any claim to the contrary, the court may assume that the regulation was promulgated in accordance with the procedures prescribed by the Uniform Administrative

Procedure Act," there is no indication in the court's memorandum of decision that its ultimate conclusion rested upon a finding that the plaintiff was rendering police services to the dog track through off-duty police officers. To the contrary, the trial court's memorandum of decision discloses that its dismissal of the plaintiff's appeal was based upon its finding that the plaintiff was providing private protection or patrol work as specified in § 12-407 (2) (i) (E).

There is no error.

In this opinion the other justices concurred.