******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ANTHONY J. MAIO *v.* CITY OF NEW HAVEN
## (SC 19401)

Rogers, C. J., and Palmer, Eveleigh,
McDonald and Robinson, Js.*

*Syllabus*

Pursuant to statute (§ 53-39a), a police officer may seek indemnification from his employing governmental unit for economic loss sustained in the defense of an unsuccessful prosecution of a crime allegedly committed by such officer in the course of his duty.

The plaintiff police officer, who was acquitted of certain crimes with which he was charged in connection with his conduct toward two complainants that allegedly occurred while he was working an extra duty shift at a local bar, brought an action against the defendant city pursuant to § 53-39a, seeking indemnification for the economic losses he incurred in connection with his criminal trial. At the indemnification trial, the defendant intended to have the complainants testify to rebut the plaintiff's contention that he was acting in the course of his duty, as required for a claim under § 53-39a, when, according to the complainants, he assaulted them. When the complainants failed to appear at trial, the defendant sought to offer the complainants' criminal trial testimony pursuant to the provision of the Connecticut Code of Evidence (§ 8-6 [1]) allowing the admission of an unavailable witness' prior testimony at a subsequent trial. The trial court excluded the prior testimony of both complainants, concluding that the complainants were not unavailable witnesses because, inter alia, the defendant had sufficient opportunity before trial to depose both complainants. Following a trial, the jury returned a verdict for the plaintiff, awarding him attorney's fees, accrued compensatory time and lost overtime. In a postverdict motion, the defendant claimed, inter alia, that the plaintiff was not acting in the course of his duty when he entered the bar during his shift in violation of a specific binding police department order regarding extra duty work and that the plaintiff had failed to prove that his supervising officers were aware of and tolerated a consistent pattern of violations of that order and, thus, had acquiesced in his presence inside the bar. The defendant also claimed that the trial court improperly excluded the complainants' prior criminal trial testimony. The trial court denied the motion and rendered judgment for the plaintiff, from which the defendant appealed. *Held*:

1. The defendant could not prevail on its unpreserved claim that the trial court improperly relied on workers' compensation principles in instructing the jury on the meaning of the phrase "in the course of his duty" under § 53-39a: this court addressed the defendant's claim because, even though the record revealed that the defendant failed to object to the use of workers' compensation principles at trial or in its postverdict motion for relief and drew on such principles in its requests to charge, the issue would necessarily recur on retrial, involved a question of law briefed by both parties, and the defendant could not prevail; moreover, this court concluded, after determining that the principles underlying both workers' compensation and indemnity statutes were similar, in that both types of statutes serve the remedial purpose of making an employee whole after suffering losses closely related to his or her employment and are in derogation of the common law and governmental immunity, and that the seminal cases construing § 53-39a simultaneously borrow definitions from workers' compensation and observe that § 53-39a is to be strictly construed, that it was not persuaded that workers' compensation principles were so incompatible with § 53-39a as to require overruling those seminal cases; furthermore, the legislature, having amended § 53-39a on multiple occasions without overruling this court's use of workers' compensation principles in interpreting the meaning of § 53-39a, had acquiesced in the court's use of that interpretive approach.

2. The trial court improperly declined to admit the former criminal trial testimony of the complainants when it failed to find that the complainants were unavailable to testify within the meaning of § 8-6 (1) of the

Connecticut Code of Evidence and, because this court could not conclude that the trial court's error was harmless, the judgment was reversed and the case was remanded for a new trial: the trial court incorrectly required that the defendant attempt to depose the complainants as a precondition to the admission of their prior testimony, and this court, relying on the definition in the Federal Rules of Evidence of the term "unavailable," noted that a deposition requirement runs counter to the federal rules and was inapplicable to prior sworn testimony, as such a requirement would impose significant burdens on parties without any corresponding benefit to the reliability of the testimony to be admitted; furthermore, the trial court improperly declined to give weight to the representations of the defendant's counsel regarding his efforts in attempting to procure the complainants' presence at trial, a matter that counsel was competent to explain, and opposing counsel's objection to the use of such representations was based solely on the assertion that the court was not permitted to rely on such representations, rather than on any claim that the representations were inaccurate; moreover, in light of the interrelatedness of the trial court's errors, this court could not conclude that the exclusion of the complainants' testimony did not affect the jury's verdict, as such testimony was critical to the defendant's claim that the plaintiff was not acting in the course of his duty as a police officer during the relevant time period, even if the plaintiff's employer acquiesced in the plaintiff's presence inside the bar.

Argued October 19, 2016—officially released September 5, 2017

*Procedural History*

Action for indemnification of economic losses incurred as a result of an unsuccessful criminal prosecution against the plaintiff in his capacity as a police officer employed by the defendant, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Wilson, J.*; verdict for the plaintiff; thereafter, the court denied the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict and the plaintiff's motion for interest, and rendered judgment for the plaintiff in accordance with the verdict, from which the defendant appealed and the plaintiff cross appealed. *Reversed; new trial.*

*Proloy K. Das*, with whom were *Christopher M. Neary*, deputy corporation counsel, and, on the brief, *Erin E. Canalia*, *Craigin B. Howland* and *Sarah Gruber*, for the appellant-appellee (defendant).

*Daniel Scholfield*, with whom, on the brief, were *Donn A. Swift* and *Matthew D. Popilowski*, for the appellee-appellant (plaintiff).

*Opinion*

PALMER, J. Under General Statutes § 53-39a, a police officer acquitted of crimes "allegedly committed by such officer in the course of his duty" is entitled to indemnification from "his employing governmental unit for economic loss sustained by him as a result of such prosecution . . . ."[1] The plaintiff, Anthony J. Maio, a police officer with the New Haven Police Department (department), sought such reimbursement from the defendant, the city of New Haven, after he was acquitted of charges of sexual assault in the fourth degree and unlawful restraint[2] for conduct involving two young women that allegedly occurred while he was working an "extra duty" shift at a local nightclub. When the defendant declined to reimburse the plaintiff in accordance with § 53-39a, the plaintiff brought this action for indemnification. Following a trial, the jury returned a verdict for the plaintiff, and the defendant appealed,[3] claiming that the trial court improperly (1) instructed the jury on the meaning of the phrase "in the course of [the officer's] duty" as that language is used in § 53-39a,[4] and (2) precluded the defendant's use of the testimony of two key state's witnesses at the plaintiff's criminal trial, namely, A and J, the complainants and alleged victims of the plaintiff's claimed misconduct (complainants). Although we disagree with the defendant's claim of instructional impropriety, we agree that the trial court improperly prohibited the defendant from using the complainants' prior testimony and, further, that that evidentiary error was not harmless. We conclude, therefore, that the defendant is entitled to a new trial.

The following facts and procedural history are relevant to our resolution of this appeal. On April 18, 2008, the plaintiff was scheduled to work an "extra duty" shift at Bar, a nightclub located on Crown Street in New Haven. In the early hours of April 19, 2008, as patrons were leaving Bar, the complainants approached Christopher Kelly, then a lieutenant in the department, in the street outside Bar and reported that they had been sexually assaulted by the plaintiff. The plaintiff subsequently was arrested on charges of sexual assault in the fourth degree and unlawful restraint in the second degree and placed on administrative leave. He eventually was acquitted of all charges, however, and, thereafter, he commenced this indemnification action against the defendant pursuant to § 53-39a.

The case proceeded to a jury trial, at which the plaintiff presented testimony from several officers for the purpose of demonstrating that he was acting "in the course of his duty" for purposes of § 53-39a while performing his "extra duty" shift at Bar. Specifically, the plaintiff sought to demonstrate that he was entitled to indemnification notwithstanding his admission that he was physically present inside Bar in violation of General Order 82-1, an order of the department that provides

that an officer assigned to an extra duty shift at a bar or nightclub may not enter that establishment except in certain limited circumstances not applicable to the present case.[5] These officers, as well as the plaintiff, testified that the department's rules proscribing the plaintiff's conduct were routinely violated without sanction and that high-ranking department officers were aware of such violations.[6] In addition, the plaintiff testified that his interactions with the complainants on the night in question were benign and professional.[7] The defendant countered with testimony from ranking police officers who maintained that the plaintiff's presence inside Bar violated the department's orders and was not authorized, either explicitly or implicitly, by the plaintiff's superior officers. In addition, the defendant sought to introduce into evidence, under § 8-6 (1) of the Connecticut Code of Evidence,[8] the criminal trial testimony of the complainants concerning their encounter with the plaintiff. After finding that neither complainant was "unavailable" within the meaning of § 8-6, however, the trial court denied the defendant's request and barred the defendant's use of the complainants' prior testimony.

The jury returned a verdict in favor of the plaintiff, awarding $187,256.46 in attorney's fees, accrued compensatory time, and lost overtime. Thereafter, the defendant filed a motion seeking judgment notwithstanding the verdict or, in the alternative, a new trial. In that motion, the defendant conceded that "[t]he phrase, 'in the course of his duty,' is construed consistent with the meaning of 'course of employment' under workers' compensation law," and that an employer's acquiescence in the otherwise prohibited conduct of an employee is one consideration in determining whether an officer is acting "in the course of his duty" under § 53-39a. Specifically, the defendant observed that, "[a]s the [c]ourt instructed the jury, General Order 82-1 was in effect at the time of this incident and constituted a binding workplace rule and regulation, *unless the [c]hief of [p]olice and other ranking administration officials were aware of and tolerated a consistent pattern of violations of that order*, such that the [d]epartment acquiesced in a pattern or practice of disregard of the General Order." (Emphasis added.) Thus, "[a]s a part of his burden of proof in this case, [the plaintiff] was obligated to establish that violations of General Order 82-1 were ignored by, not merely lower-ranking . . . officers [of the department], but by [high-ranking] officials of the [d]epartment." The defendant contended that the plaintiff had failed to prove that his supervising officers had acquiesced in his presence inside Bar. Finally, the defendant claimed that the court had improperly excluded the complainants' prior testimony.

The trial court denied the defendant's motion.[9] In its memorandum of decision, the court explained that,

contrary to the defendant's claim, the plaintiff presented sufficient evidence for a jury to conclude that the plaintiff remained within "the course of his duty" while inside Bar because the plaintiff's supervising officers were aware of, and had acquiesced in, similar violations of General Order 82-1 in the past. The court also rejected the defendant's contention that the court improperly had declined to admit the complainants' former testimony.

On appeal, the defendant claims that the trial court improperly instructed the jury on the meaning of the phrase "in the course of his duty" in accordance with principles borrowed from workers' compensation law and that the court improperly relied on such principles in rejecting the defendant's motion for postverdict relief. The defendant also contends that the trial court improperly excluded the testimony of the complainants after declining to find them "unavailable," as required by § 8-6 of the Connecticut Code of Evidence for the introduction of former testimony. Although we conclude that the defendant's first claim lacks merit, we agree with the defendant's claim under § 8-6, and, therefore, we reverse the trial court's judgment and remand the case for a new trial.[10]

I

The defendant first contends that the trial court improperly relied on workers' compensation principles in instructing the jury on the meaning of the phrase "in the course of his duty" under § 53-39a and in denying the defendant's postverdict motion. The defendant objects generally to the trial court's application of workers' compensation principles to § 53-39a, and specifically to the use of the principle that an employer may "acquiesce" in a particular practice by an employee, thereby making it a permissible "incident of the employment." As the foregoing procedural history demonstrates, however, the defendant failed to object to the use of such principles at trial, even in its motion for postverdict relief. Indeed, the record reveals that the defendant itself drew on workers' compensation principles in its request to charge and supplemental request to charge and, in fact, that it expressly requested that the court charge the jury in accordance with the principle of "employer acquiescence."[11] We therefore conclude that the defendant's claims regarding the construction of the statutory phrase "in the course of his duty" were not properly preserved for appeal. See Practice Book § 60-5 (this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial").[12]

Although we would not ordinarily address the defendant's unpreserved statutory interpretation claim, we do so here because the issue necessarily will recur on retrial. Doing so is appropriate, moreover, because the claim involves a question of law briefed by both parties,

and because the defendant cannot prevail on the claim. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 155–58, 84 A.3d 840 (2014) (record must be adequate for review, review cannot result in unfair prejudice to any party, and either [1] opposing party does not object to review or [2] party raising claim cannot prevail).

Section 53-39a provides indemnification for economic losses sustained by a police officer when that officer is prosecuted for, but subsequently acquitted of, a crime "allegedly committed by such officer in the course of his duty as such . . . ." See *Rawling* v. *New Haven*, 206 Conn. 100, 106, 537 A.2d 439 (1988) ("[A]ny person who invokes § 53-39a must sustain a twofold burden of proof. In order to receive indemnity, a police officer must prove not only that the charges against him were dismissed, or that he was acquitted, but also that the charges arose 'in the course of his duty' as a policeman."). In *Link* v. *Shelton*, 186 Conn. 623, 627–28, 443 A.2d 902 (1982), after noting that the phrase "in the course of his duty" was not defined by statute or explained in the legislative history of § 53-39a, we turned to the construction of " '[a]rising out of and in the course of his employment,' " a parallel phrase used in workers' compensation statutes, to determine its meaning. See General Statutes § 31-275 (1). We concluded that a police officer who reported late to work and created a "disturbance" in the waiting area of the police station remained "in the course of his duty" for purposes of indemnification following his acquittal of the charge of breach of the peace. *Link* v. *Shelton*, supra, 628–29.

When we again were called on to consider the meaning of the phrase several years later, we explicitly acknowledged that "[*Link*] instructs us to construe the phrase 'in the course of his duty' by looking to the meaning of 'course of employment' under workers' compensation law." *Rawling* v. *New Haven*, supra, 206 Conn. 106. In *Rawling*, we determined that whether an officer was "in the course of his duty" under § 53-39a could be determined by a three-pronged test, focusing on whether the relevant conduct occurred "(a) within the period of the employment; (b) at a place the employee may reasonably be; and (c) while the employee is reasonably fulfilling the duties of the employment or doing something incidental to it." (Internal quotation marks omitted.) Id., 107, quoting *McNamara* v. *Hamden*, 176 Conn. 547, 550–51, 398 A.2d 1161 (1979); see *McNamara* v. *Hamden*, supra, 548, 550–51 (whether table tennis games on employer's premises were "incident of [plaintiff's] employment" for workers' compensation purposes); footnote 6 of this opinion; see also *Mihalick* v. *Simsbury*, Docket No. 3-95-CV-1822 (WWE), 1997 WL 43111, *2 (D. Conn. January 10, 1997) (using workers' compensation principles to determine whether plaintiff was "in the course of his duty"); *San-*

*tana* v. *Hartford*, 94 Conn. App. 445, 452, 894 A.2d 307 (2006) (same), aff'd, 282 Conn. 19, 918 A.2d 267 (2007); *Crotty* v. *Naugatuck*, 25 Conn. App. 599, 603–604, 595 A.2d 928 (1991) (same).

In the present case, the defendant questions the propriety of relying on workers' compensation principles for purposes of § 53-39a, contending that workers' compensation statutes, being remedial in nature and liberally construed, are poorly suited to the interpretation of § 53-39a, which, as a statute in derogation of the common law and municipal immunity, must be strictly construed. The defendant argues that, under a strict interpretation of the statute, the plaintiff could not be physically present within Bar in violation of the department's orders while remaining "in the course of his duty" under § 53-39a, and, indeed, that police officers working "extra duty" shifts generally would not be covered by § 53-39a.

In arguing that we should overrule *Link* and *Rawling*, however, the defendant overstates the difference between workers' compensation principles and those principles that underlie indemnity statutes like § 53-39a. Indemnification, like workers' compensation, serves the remedial purpose of making an employee whole after suffering losses closely related to his or her employment. See, e.g., *Norwich* v. *Silverberg*, 200 Conn. 367, 369, 374, 511 A.2d 336 (1986) (municipal indemnification statute protecting employee from costs of action incurred "while acting in the discharge of his duties"; General Statutes § 7-101a [b]; was "designed to furnish some relief for injustice that would otherwise attend our [well established] doctrine of sovereign municipal immunity"). Moreover, workers' compensation statutes, like indemnity statutes, are in derogation of the common law and governmental immunity. See, e.g., *DeOliveira* v. *Liberty Mutual Ins. Co.*, 273 Conn. 487, 499, 870 A.2d 1066 (2005) (workers' compensation scheme "compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation" [internal quotation marks omitted]); *Dechio* v. *Raymark Industries, Inc.*, 114 Conn. App. 58, 77, 968 A.2d 450 (2009) (*Lavine, J.*, dissenting) (noting that workers' compensation statutes are in derogation of common-law remedies), aff'd, 299 Conn. 376, 10 A.3d 20 (2010).

In light of these similarities, we hesitate to find fault with cases that import concepts from one of these areas into the other. We are especially leery of doing so when the seminal cases construing § 53-39a simultaneously borrow definitions from workers' compensation *and* observe that § 53-39a is to be strictly construed. See, e.g., *Rawling* v. *New Haven*, supra, 206 Conn. 105, 112. In such a context, the defendant has not persuaded us that workers' compensation principles are so incompatible with § 53-39a as to require overruling *Link* and

*Rawling.* See *Conway* v. *Wilton*, 238 Conn. 653, 660–61, 680 A.2d 242 (1996) ("[t]he doctrine [of stare decisis] requires a clear showing that an established rule is incorrect and harmful before it is abandoned" [internal quotation marks omitted]).[13]

Finally, we note again that the courts of this state have for the past thirty-five years relied explicitly and repeatedly on principles of workers' compensation law to interpret § 53-39a. During this time, the legislature has amended § 53-39a on multiple occasions without overruling this interpretive approach. See, e.g., Public Acts 2010, No. 10-68, § 1 (providing for recovery of legal fees charged in indemnification action); Public Acts 2003, No. 03-97, § 2 (allowing state police officers to pursue action under statute in Superior Court). As a result, in the absence of further guidance, we conclude that the legislature has acquiesced in our use of workers' compensation principles for interpreting the meaning of the phrase "in the course of his duty" under § 53-39a. See *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 783, 739 A.2d 238 (1999) ("[t]he legislature is presumed to be aware of the interpretation of a statute and . . . its subsequent nonaction may be understood as a validation of that interpretation"). If the legislature believes we have mistaken its silence, it can easily overrule us. In the absence of such overruling, however, the defendant cannot prevail on its statutory interpretation claims.

II

The defendant also contends that the trial court improperly excluded the former testimony of the complainants by failing to find that they were "unavailable" for purposes of the former testimony exception to the hearsay rule, which requires such a finding. We agree with this claim.

Section 8-6 (1) of the Connecticut Code of Evidence provides that the prior testimony of an unavailable witness may be admitted at a subsequent trial if the issues in the prior proceeding were "substantially similar" to those in the proceeding at which the testimony is being offered and the opposing party had an opportunity to develop that testimony at the earlier proceeding. See *State* v. *Rodriguez*, 68 Conn. App. 303, 311, 791 A.2d 621 (proponent of former testimony must satisfy two part test: witness is unavailable and prior testimony was reliable), cert. denied, 260 Conn. 920, 797 A.2d 518 (2002). In this case, there is no challenge to the trial court's determination that the prior testimony was reliable under § 8-6, and the plaintiff also makes no claim that the issues at the two trials were not substantially similar. We therefore review only the court's conclusion that the complainants were not unavailable.

We have held that "[d]ue diligence to procure the attendance of the absent witness is an essential predi-

cate to unavailability." (Internal quotation marks omitted.) *Crochiere* v. *Board of Education*, 227 Conn. 333, 356, 630 A.2d 1027 (1993); see also *State* v. *Rivera*, 221 Conn. 58, 62, 602 A.2d 571 (1992) ("[a] proponent [of former testimony] must exercise due diligence and . . . make a good faith effort to procure the declarant's attendance" [internal quotation marks omitted]). At the same time, in demonstrating the witness' unavailability, "[a] proponent's burden is to demonstrate a diligent and reasonable effort, not to do everything conceivable, to secure the witness' presence." *State* v. *Lopez*, 239 Conn. 56, 77–78, 681 A.2d 950 (1996).

The defendant intended to have the complainants testify at trial to rebut the plaintiff's contention that he was "in the course of his duty" when, according to the complainants, he assaulted them. When neither of the complainants appeared to testify at trial, however, the defendant moved to have their prior testimony from the criminal trial admitted into evidence under § 8-6 (1) of the Connecticut Code of Evidence. At the hearing on the defendant's motion, the defendant sought to demonstrate due diligence, as required for a finding of unavailability under § 8-6, by detailing its efforts to procure the complainants' attendance at trial. Counsel for the defendant first represented to the court that he "repeatedly" had been in touch by telephone with A, who lived in Longmeadow, Massachusetts, and that she had agreed to testify. Counsel further explained, however, that, on the eve of the trial, A indicated that she might have other plans, and thereafter stopped responding to counsel's calls. Counsel also informed the court that he had been in contact with J, an East Haven resident, "as recently as last week," and stated that she had also agreed to testify at the indemnification trial. Thereafter, counsel telephoned J "repeatedly" but was unable to leave a voice message. "[I]n an abundance of caution," he had also sought to have her served with a subpoena when she first indicated she might not be willing to attend. A judicial marshal then testified that he had tried unsuccessfully to serve J with the subpoena, going to her house five times during the prior week and attempting to serve her at work once.

Notwithstanding counsel's efforts, the trial court concluded, with respect to A, that, even though she was out of state and not amenable to subpoena in a civil action, the court could not find her "unavailable" in view of counsel's failure to attempt to "preserve her testimony" by deposition. The court made a similar finding as to J, the in-state witness, observing that counsel had sufficient time before trial to depose both complainants: "So what I'm saying is . . . that through the discovery process, you had an opportunity to notice . . . the depositions of both young ladies. . . . [Y]ou [c]ould have . . . secure[d] their . . . testimony by way of deposition." The court further explained that "[J] is more compelling against not allowing her former

testimony because she's right here in East Haven. Her deposition could have been secured months ago." On that basis, the court excluded the former testimony of both complainants.[14]

In its motion to set aside the verdict, the defendant argued that the trial court improperly concluded that the defendant had not exercised due diligence in procuring the complainants' attendance at trial, in part due to the imposition of a deposition requirement. The court denied the defendant's motion, concluding, once again, that the defendant "had ample opportunity to preserve the testimony of [the complainants] through deposition and did not do so." The court also determined that it was not permitted to rely on the representations of counsel regarding the defendant's efforts to secure the complainants' attendance and, therefore, was required to disregard the defendant's explanation of the complainants' sudden change of plans.

On appeal, the defendant claims that the court incorrectly predicated its finding of unavailability on the defendant's attempts to procure depositions from the complainants and that the court also incorrectly believed that it could not properly rely on defense counsel's representations regarding the complainants' unavailability. Because we agree with both of the defendant's claims, we conclude that the trial court improperly declined to admit the complainants' former testimony.

First, the trial court incorrectly required that the defendant attempt to depose the complainants as a precondition to the admission of their former testimony. In assessing whether a declarant is "unavailable" for the purpose of admitting evidence under an exception to the hearsay rule, we have stated that this court follows the definition of the term "unavailable" in rule 804 (a) of the Federal Rules of Evidence. See, e.g., *State v. Schiappa*, 248 Conn. 132, 141–42, 728 A.2d 466 ("[i]n determining whether the declarant is unavailable, we employ the definitions set forth in rule 804 [a] of the Federal Rules of Evidence"), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). Rule 804 (a) (5) of the Federal Rules of Evidence provides that a declarant may be considered "unavailable" if he "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure: (A) *the declarant's attendance*, in the case of a hearsay exception under [r]ule 804 (b) (1) [*former testimony*] or (6); or (B) *the declarant's attendance or testimony*, in the case of a hearsay exception under [r]ule 804 (b) (2), (3), or (4)." (Emphasis added.) Thus, as the Judiciary Committee's notes on rule 804 explain: "The [c]ommittee amended the [r]ule to insert after the word attendance the parenthetical expression (or, in the case of a hearsay exception under subdivision (b) (2), (3), or (4), his attendance or

testimony). The amendment is designed primarily to require that an attempt be made to depose a witness (as well as to seek his attendance) as a precondition to the witness being deemed unavailable. *The [c]ommittee, however, recognized the propriety of an exception to this additional requirement when it is the declarant's former testimony that is sought to be admitted under subdivision (b) (1) [concerning former testimony]*." (Emphasis added; internal quotation marks omitted.) Fed. R. Evid. 804, judiciary committee notes, House Report No. 93-650, 28 U.S.C. app., p. 1080 (2012).

In excluding the complainants' former testimony, the trial court relied primarily on *Schaffer* v. *Lindy*, 8 Conn. App. 96, 101, 511 A.2d 1022 (1986), overruled on other grounds by *Stuart* v. *Stuart*, 297 Conn. 26, 44, 996 A.2d 259 (2010), for the proposition that "an attempt [must] be made to depose a witness . . . as a precondition to the witness being deemed unavailable." (Internal quotation marks omitted.) That case, which involved the admissibility of a statement against penal interest, does indeed stand for the proposition that, *in certain situations*, the proponent of hearsay must attempt to depose the declarant. As the federal rules make clear, however, the deposition requirement discussed in *Schaffer* applies only to certain exceptions to the rule against hearsay, such as statements against penal interest under rule 804 (b) (3) of the Federal Rules of Evidence, and it does not apply to prior sworn testimony under rule 804 (b) (1) of the Federal Rules of Evidence.

Thus, the trial court's insistence that the defendant should have attempted to depose the complainants runs counter to the clear guidance provided by the federal rules and our established reliance on their provisions for assessing unavailability.[15] Indeed, imposing the additional hurdle of a deposition makes little sense in the context of prior sworn testimony. A deposition requirement applies to statements against penal interest because those statements do not necessarily provide the same indicia of reliability as sworn testimony, which is virtually identical to in-court testimony for purposes of reliability. See *Atwood* v. *Atwood*, 86 Conn. 579, 583, 86 A. 29 (1913) (noting that deposition testimony and prior in-court testimony are indistinguishable in terms of their reliability). In contrast, no deposition requirement exists for former testimony for the simple reason that it would impose significant burdens on parties without any corresponding benefit to the reliability of the testimony to be admitted.

The trial court also improperly declined to give weight to the defendant's "unsupported representations" regarding its efforts to procure the complainants' presence at trial, which the court determined were inadequate to support a claim of unavailability under *State* v. *Aillon*, 202 Conn. 385, 391, 521 A.2d 555 (1987). As the defendant maintains on appeal, however, *Aillon*

does not stand for the proposition that the court may never rely on counsel's representations in determining the availability of witnesses once those representations are challenged by opposing counsel. In *Aillon*, defense counsel represented that "he had been advised that [the witness] was not presently willing to hold himself out as an expert on hair 'because he doesn't do that any longer.' " *State* v. *Aillon*, supra, 202 Conn. 389. However, counsel made "no attempt whatsoever to secure [the witness'] physical presence so that he might personally advise the court as to his present inability, or unwilling-ness, to testify as an expert hair analyst." Id., 391. As a result, this court held that, "[i]n the face of an objec-tion by the state, the defendant did not satisfy his burden of proof through the unsupported representations of defense counsel that [the witness] was no longer quali-fied as an expert"; id.; because those representations provided no evidence as to whether the declarant was still qualified to testify as an expert, or whether he was "merely recalcitrant." Id., 392.

In the present case, by contrast, counsel's representa-tions concerned the extent of the defendant's *own efforts* to procure the complainants' attendance, a mat-ter that counsel was perfectly competent to explain. Indeed, "[i]t long has been the practice that a trial court may rely upon certain representations made to it by attorneys, who are officers of the court and bound to make truthful statements of fact or law to the court." (Internal quotation marks omitted.) *State* v. *Chambers*, 296 Conn. 397, 419, 994 A.2d 1248 (2010); see also *State* v. *Lopez*, supra, 239 Conn. 79 ("it is within the discretion of the trial court to accept or to reject the proponent's representations regarding the unavailability of a declar-ant"). Accordingly, the court was not required to disre-gard the defendant's representations on the issue of its diligence in procuring the complainants' attendance—the sine qua non of unavailability under our case law—even in the face of opposing counsel's objection to the use of such representations. Our conclusion in this regard is buttressed by the fact that the plaintiff's objec-tion to defense counsel's representations was based solely on the assertion that the trial court was not per-mitted to rely on such representations in determining the reasonableness of counsel's efforts to secure the complainants' attendance at trial, and not on any claim that the representations were inaccurate.

In light of the interrelatedness of these errors, we cannot tell whether the trial court would have reached the same conclusion had its opinion been grounded in an accurate reading of the law. Nor can we view these errors as harmless, because, as the trial court repeatedly acknowledged and the plaintiff effectively conceded at trial, the complainants' testimony was critical to the defendant's claim that the plaintiff was not *acting* in the course of his duty during the relevant time period, even assuming that his employer acquiesced in his pres-

ence inside Bar.[16] See *Klein* v. *Norwalk Hospital,* 299 Conn. 241, 254–55, 9 A.3d 364 (2010) ("[A]n evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the jury's verdict. . . . A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial." [Internal quotation marks omitted.]). Indeed, both the trial court and the plaintiff acknowledged that the complainants were the only two witnesses who could contradict the plaintiff's testimony regarding the details of their interaction at Bar. Although several other witnesses at the indemnification trial questioned the plaintiff's version of events, their testimony was not an adequate substitute for the complainants' firsthand account of the plaintiff's allegedly unlawful conduct inside Bar, testimony that could have provided strong support for the defendant's contention that the plaintiff's conduct was undertaken outside the course of his duty as a police officer. In this context, it cannot be said with any reasonable assurance that the exclusion of the complainants' former testimony did not affect the jury's verdict.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.

* This case was originally argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald and Robinson. Thereafter, Justice Zarella retired from this court and did not participate in the consideration of this decision.

[1] General Statutes § 53-39a provides in relevant part: "Whenever, in any prosecution of an officer of the Division of State Police . . . or a local police department for a crime allegedly committed by such officer in the course of his duty as such, the charge is dismissed or the officer found not guilty, such officer shall be indemnified by his employing governmental unit for economic loss sustained by him as a result of such prosecution, including the payment of attorney's fees and costs incurred during the prosecution and the enforcement of this section. . . ."

[2] The plaintiff was charged with two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2) and two counts of unlawful restraint in the second degree in violation of General Statutes § 53a-96.

[3] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] As we discuss more fully hereinafter, the defendant also contends that the trial court relied on an incorrect interpretation of the phrase in denying the defendant's motion for postverdict relief. This contention is in all material respects identical to the defendant's claim of instructional impropriety.

[5] Dept. of Police Service, New Haven Police Dept., General Order 82-1 (effective January 25, 1982) provides in relevant part: "The purpose of this General Order is to restate the . . . [d]epartment policy regarding extra duty work at nightclubs and bars. . . .

"A police officer will not be assigned on an extra duty assignment at a *nightclub* or *bar* unless the following regulations promulgated under this directive are adhered to:

"1. The officer assigned to the extra duty shall work only in a recognized parking lot with the main responsibility being to protect vehicles from thefts, acts of vandalism, and to prevent any disturbances that might take place in said parking lot . . .

"3. The officer assigned shall not enter the premises of the nightclub or bar itself, except in response to a criminal complaint or other emergency;

"4. When the officer is required to enter the nightclub or bar, the officer will immediately contact the radio dispatcher; inform the dispatcher of the

action being taken, and request a complaint number;

"5. Whenever the officer has been required to enter a nightclub or bar, the officer shall prepare a case incident report and shall request that a radio car be dispatched to take the report to headquarters; and

"6. If the person requesting the hiring of a police officer for work at a nightclub or bar agrees to all the conditions set forth in this General Order, a letter will be directed to the Commander Officer of the Traffic and License Unit making such request and indicating the officer hired will only perform the duties listed above. . . ." (Emphasis in original.)

[6] As we explain more fully hereinafter, this court previously has held that the meaning of the phrase "in the course of his duty" under § 53-39a is guided by our construction of the phrase "course of employment" as that phrase is used in our workers' compensation statutes, General Statutes § 31-275 et seq. See, e.g., *Rawling* v. *New Haven*, 206 Conn. 100, 106, 537 A.2d 439 (1988). Whether an employee's conduct falls within the "course of [his] employment" for workers' compensation purposes is typically a fact-based determination that requires consideration of a variety of factors, including the "time, place and extent of [any] deviation [from the duties of his employment] . . . as well as what duties were required of the employee and the conditions surrounding the performance of his work . . . ." (Citation omitted; internal quotation marks omitted.) Id., 107.

[7] The plaintiff testified that, at closing time, he was approached by the complainants, who began to flirt with him in the vestibule of Bar, where he was stationed. After speaking to the complainants for a period of time, the plaintiff excused himself and went upstairs to the office to check in with the manager. While there, he heard what sounded like a bottle breaking, and when he stepped out of the office onto the landing to investigate, he heard "laughing and giggling" emanating from a private staff bathroom on the second floor and noticed that the weighted "European style" doors had not been properly closed. Upon pushing the door open, he saw the complainants. The plaintiff told them that they were not permitted to be there, but the complainants simply dismissed him, grabbing his notepad and writing, "Officer Maio, I [heart] you." One complainant tried to put her hand to his mouth. The complainants eventually left, squeezing by him in the narrow hallway, and the plaintiff saw them just once more that night, laughing and joking with each other as he investigated a separate altercation outside.

[8] Section 8-6 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, provided (A) the issues in the former hearing are the same or substantially similar to those in the hearing in which the testimony is being offered, and (B) the party against whom the testimony is now offered had an opportunity to develop the testimony in the former hearing. . . ."

[9] In support of its posttrial motion, the defendant also claimed that the trial court improperly had declined to instruct the jury that the plaintiff's prior acquittal, standing alone, did not demonstrate that he had acted properly with the complainants. The trial court rejected this claim, however, and the defendant does not challenge that ruling on appeal.

[10] Following judgment, the trial court also denied the plaintiff's postjudgment motion for offer of compromise interest under General Statutes § 52-192a. The plaintiff cross appeals from that judgment, claiming that the trial court incorrectly determined that municipalities are immune to liability for such interest. Because this issue will arise on retrial only if the plaintiff prevails, we do not consider the plaintiff's cross appeal.

[11] At oral argument before this court, the defendant asserted that it had preserved its statutory claims by objecting to one of the workers' compensation principles imported from *Kish* v. *Nursing & Home Care, Inc.*, 248 Conn. 379, 386, 727 A.2d 1253 (1999), namely, the notion that there is "no bright line test distinguish[ing] activities that are incidental to employment from those that constitute a substantial deviation therefrom." (Internal quotation marks omitted.) The related colloquy reveals, however, that the defendant did not object to the use of workers' compensation principles as such, but to the relevance of the specific language from *Kish* in the context of an alleged sexual assault—conduct that it claimed was *necessarily* a substantial deviation from the plaintiff's employment activities.

The defendant also claims that the evidentiary insufficiency claim advanced at trial preserved questions of statutory interpretation for purposes of appeal because "a statutory construction analysis of . . . § 53-39a . . .

is necessary to determine whether the evidence below was sufficient." In support of this contention, the defendant cites three cases, none of which supports the proposition that statutory construction claims may be ignored at trial and then raised for the first time on appeal. At most, these cases reflect the fact that, at times, we do undertake a statutory construction analysis for the purpose of resolving a sufficiency of the evidence claim presented on appeal. See *State* v. *Moreno-Hernandez*, 317 Conn. 292, 294, 296, 299, 118 A.3d 26 (2015) (statutory claim on appeal, that certain subdivision of attempt to commit murder statute was inapplicable to defendant, had been considered by trial court); *State* v. *Drupals*, 306 Conn. 149, 156–59, 49 A.3d 962 (2012) (statutory claim on appeal, that trial court improperly determined that defendant had failed to register his new residence, as required by sex offender statute, "without undue delay"; General Statutes § 54-251 [a]; corresponded to defendant's testimony at trial that "on the basis of his understanding of the statutes, he had five days in which to notify the [sex offender registry] unit of a change of residence address, and that he was not required to provide notice of temporary or transient overnight visits"); *Bratz* v. *Harry Maring, Jr., Inc.*, 116 Conn. 186, 188–90, 164 A. 388 (1933) (plaintiff's claim on appeal was based on interpretation of proximate cause under statute that plaintiff had advanced in trial court and which that court rejected). None of these cases addresses the issue of preservation. In any event, adopting the defendant's view of preservation, whereby statutory construction claims are preserved simply by arguing at trial that the evidence is insufficient, would be inconsistent with the requirement that claims be raised "distinctly" at trial.

[12] Alternatively, the defendant contends that it is entitled to prevail on this issue under the plain error doctrine. See Practice Book § 60-5. This claim lacks merit because, as explained hereinafter, both this court and the Appellate Court have stated that the phrase "in the course of his duty" under § 53-39a may be interpreted with reference to analogous language found in the workers' compensation statutes, and the legislature has given no indication that it disagrees with that interpretive approach. In such circumstances, it can hardly be said that the trial court's alleged error was so obviously and egregiously improper as to implicate the plain error doctrine. See *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009) ("Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." [Citations omitted; internal quotation marks omitted.]).

[13] We also reject the defendant's argument that the presence of the qualifier "as such" in the phrase "in the course of his duty as such" necessarily distinguishes between "on-duty" police officers and police officers working "extra-duty" shifts. We agree with the plaintiff that *Plainfield* v. *Commissioner of Revenue Services*, 213 Conn. 269, 567 A.2d 379 (1989), and *Berlin* v. *Commissioner of Revenue Services*, 207 Conn. 289, 540 A.2d 1051 (1988), cases involving the tax implications of "extra duty" police work, shed little light on this inquiry. In *Plainfield*, for instance, we held that the police department rendered a "private," taxable service when it provided officers for "extra duty" work at a racetrack. *Plainfield* v. *Commissioner of Revenue Services*, supra, 274–76. We expressly determined, however, that the issue was "not the relationship of the officers to the [t]own, but whether the [t]own [was] rendering services to the [d]og [t]rack." (Internal quotation marks omitted.) Id., 276. Thus, "the 'duty' status of the officers working at the dog track was irrelevant." Id., 275. In the present case, by contrast, it is precisely the relationship between the officer and the city that we must examine, and without more, we cannot say that the words "as such" lead unambiguously to the conclusion that a uniformed police officer employed for safety reasons by a nightclub, in coordination with the city, is *not* acting as a police officer under § 53-39a. Thus, it is appropriate to look to other similarly worded statutes for guidance in interpreting the phrase.

[14] We note that in deciding whether J was unavailable, the trial court also considered the defendant's efforts to secure her presence at trial by way of a subpoena and ultimately found those efforts "lacking." Ordinarily, such a finding, if supported by the record, would be sufficient to sustain the trial court's ruling excluding J's former testimony. In the present case, however, the court's analysis is so clearly shaped by its belief that the defendant had

a duty to attempt to depose J that it is impossible to separate the other, valid metrics of diligence from the alleged deposition requirement. For example, even as the court declared its willingness to listen to the marshal's testimony, it stated that it would do so "keeping in mind that [J's] deposition should [have]—could have been secured . . . because the case law refers to other process and specifically refers to the taking of the deposition." As a consequence, we must treat the defendant's failure to comply with the purported deposition requirement as central to the trial court's reasoning.

[15] To be sure, we have not previously had occasion to consider whether the federal rules apply to the specific subsection of our evidence code pertaining to former sworn testimony like that at issue here. See Conn. Code Evid. § 8-6, commentary ("[I]n *State* v. *Frye*, 182 Conn. 476, 438 A.2d 735 (1980), the court adopted the federal rule's definition of unavailability for the statement against penal interest exception; id., 481–82 . . . . The court has yet to determine whether the definition of unavailability recognized in *Frye* applies to other hearsay exceptions requiring the unavailability of the declarant." [Citations omitted.]); see also, e.g., *State* v. *Rivera*, supra, 221 Conn. 61–62 and n.2 (explaining that proponent of former testimony must "make a good faith effort to procure the declarant's attendance," rather than "attendance [or testimony]," but distinction was immaterial because proponent was unable to locate witness for either purpose). Neither the plaintiff nor the trial court, however, has provided any justification for departing from the well-reasoned approach of the federal rules or our established reliance on them for purposes of assessing "unavailability."

[16] Notably, the plaintiff himself does not argue on appeal that the trial court's errors were harmless; he merely contends that the trial court did not abuse its discretion in deeming the former testimony inadmissible.

———————————————